## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN BAR ASSOCIATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.: <br> Judge: |

### COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN TRADEMARK DILUTION, UNFAIR COMPETITION, and INJUNCTIVE and OTHER RELIEF

The Plaintiff, COLLEN IP, Intellectual Property Law, P.C., ("COLLEN IP" or "Plaintiff") brings this action to obtain injunctive relief and recompense for past and ongoing loss and damage sustained as a result of Defendant's American Bar Association, ("ABA" or "Defendant") acts of trademark infringement, below are the marks at issue.

### I.     INTRODUCTION

COLLEN IP is a leading New York intellectual property law firm, located in Westchester County, New York.  For many years the Plaintiff has used its principal design mark in association with the provision of its legal and consulting services, as shown below:



This design mark was registered on October 9, 2001 and is incontestable, U.S. Registration No. 2,495,570. Several attorneys at COLLEN IP are members of the ABA and its section of International Law. They were dismayed to find the ABA using a logo confusingly similar to Plaintiff's design.



Plaintiff immediately attempted to initiate a dialogue to resolve this issue. Plaintiff was loath to initiate legal action. However, its various and repeated attempts to resolve this dispute with the ABA and its leadership went unanswered (literally) for months and years. Plaintiff raised its concern in several letters to the ABA on September 19, 2005, March 27, 2006 and December 12, 2006. When the ABA finally responded to Plaintiff's letters on June 7, 2007, it offered no consolation. Plaintiff has been left with no device but to file this complaint to protect its own intellectual property – its own logo, a registered incontestable trademark.

As and for its Complaint against the Defendant, Plaintiff hereby state and alleges the following:

## II.    **PARTIES**

1.      Plaintiff, COLLEN IP, is a professional corporation duly organized and existing under the laws of the State of New York, located at 80 South Highland Avenue, Ossining, New York, 10562.

2.      On information and belief, Defendant American Bar Association is a not-for-profit corporation duly organized and existing under the laws of the State of Illinois, located at 321 North Clark Street, Chicago, Illinois 60610.  The ABA maintains a Section of International Law, with its principal office located at 740 15th Street, NW, Washington, D.C. 20005.

## III.    **JURISDICTION AND VENUE**

3.      This action is for Trademark Infringement pursuant to the Lanham Act §32(1), 15 U.S.C. §1114(1)(a), False Designation of Origin, Unfair Competition and Trademark Dilution arising under the Lanham Act §43(a), 15 U.S.C. §1125, under the Common Law.

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. § 1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts), and 15 U.S.C. § 1114, § 1125. This Court also has supplemental jurisdiction over the asserted claim of common law Trademark Infringement, pursuant to 28 U.S.C. § 1367(a), because such claims are so related to those claims under which the Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, and upon information and belief Defendant and its principles conduct substantial business and reside in this District.

## IV.    **FACTS**

6.    COLLEN *IP* is a professional corporation, which engages in the practice of law in the field of intellectual property, litigation, and related business concerns, such as transactions, licensing and contracting. Plaintiff represents many famous internationally known businesses and brands. Indeed, Plaintiff's clientele consists of many foreign businesses and foreign law firms (and their respective clients) who Plaintiff represents before several courts of the United States, the United States Patent and Trademark Office, the United States Copyright Office, and in other United States administrative agencies and tribunals.

7.    Plaintiff was founded in 1996 by principals Jess M. Collen and Jane F. Collen. Over the past decade, the law firm has grown rapidly from a firm of five attorneys and staff, to a law firm of more than thirty-five employees, including attorneys, law clerks, professional and support staff. In this time, Plaintiff and its active intellectual property practice has become well-known. Plaintiff has represented clients in many federal lawsuits across the United States, including its home jurisdictions, the Southern District of New York and the United States Circuit Court of Appeals for the Second Circuit, the Eastern, Western, and Northern Districts of New York, the Districts of New Jersey, Connecticut, Massachusetts, Colorado, Nevada, the Eastern and Southern Districts of Texas, the Middle and Southern Districts of Florida, the Northern, Central,

4

and Southern Districts of California, the Eastern District of Michigan, the Northern

District of Illinois, the Northern District of Indiana, the Western and Eastern Districts of

Pennsylvania, the Northern District of Georgia, the Western District of North Carolina,

the Eastern District of Tennessee, the United States Circuit Court of Appeals for the

Second, Seventh, Ninth, and Federal Circuits and others.

8.      Plaintiff and its attorneys are active within organizations in the legal

profession, such as the International Trademark Association, regularly participating in

speaking engagements, sponsoring and hosting seminars for Continuing Legal Education,

and engaging in academic commentary and publications. In the past year alone,

Plaintiff's attorneys participated, hosted, and/or organized six Continuing Legal

Education seminars for organizations such as the International Trademark Association,

Pace University School of Law, and the Westchester County Bar Association. Plaintiff

has received awards from the legal community in recognition of its services and

expertise. For example, in 2003, Jess M. Collen was awarded Top 10 Trademark Lawyers

in the United States by the Trademark Insider and the firm was ranked in the top 200

firms in the United States.

9.      Plaintiff has expanded its business and has a client base that encompasses

famous internationally recognized businesses and their intellectual property brands, such

as SWATCH, OMEGA, KLM, JVC, BABYBEL, LONGINES, TISSOT, YSL YVES

SAINT LAURENT, the Andy Warhol Foundation and ASPEX Eyewear.

10.     Plaintiff has a diversified base of international clients, representing

corporations from essentially every industrialized country in the world, such as the

United Kingdom, France, Japan, and India, as well as emerging countries, such as Guyana.

11.     Throughout Plaintiff's existence, Plaintiff has established itself among the United States and global intellectual property community as the provider of high quality and reliable legal services.

12.     In addition to representing clients in the United States, Plaintiff assists its clients to obtain intellectual property protection in other jurisdictions around the world, either through execution and operation of applicable treaties, or through coordinating efforts with legal professionals who are licensed to practice law in foreign territories.

13.     A significant portion of Plaintiff's practice is international in nature. For example, for every domestic client who needs protection of its intellectual property rights abroad, Plaintiff coordinates global enforcement strategies across borders. For example, Plaintiff coordinated global registration of Beyonce Knowles's trademark for her new clothing line, HOUSE OF DEREON, seeking trademarks registrations in numerous countries throughout the world. Likewise, Plaintiff implements the American aspects of the global protection strategies for foreign law firms and clients. For example, Plaintiff represented the manufacturer of TOMTOM brand navigation systems in the United States Patent and Trademark Office, which was only one element of an international dispute spanning eight countries. Plaintiff also represents the brands of television reality shows FEAR FACTOR, BIG BROTHER, SURVIVOR and DEAL OR NO DEAL which are broadcast in the United States and internationally.

14.     In association with its legal services and consistent with its expertise in brand development and protection, Plaintiff has adopted and registered its trademark

known as the C stylized trademark (the "C Mark") registration no. 2,495,570, in the Class 42, for "legal services," with first use in November 13, 1999, as set forth below:



A true and correct copy of Plaintiff's trademark registration is attached hereto as Exhibit A.

15.    Plaintiff incorporates it C Mark on its letterhead, business cards, website, newsletter, correspondence, and other written materials. A sample of these materials is attached hereto as Exhibit B.

16.    Plaintiff's registered trademark has been advertised and promoted and otherwise used in commerce throughout the United States and globally, including this District, since at least as early as 1996.

17.    Federal registration of a trademark is *prima facie* evidence of a Registrant's exclusive right to use the registered trademark in commerce in connection with the goods or services specified in the certificate, pursuant to 15 U.S.C. § 1057(b).

18.    Plaintiff's C Mark has acquired a distinctiveness and secondary meaning signifying Plaintiff and its services. The public and trade have come to rely on the Plaintiff's C Mark to distinguish its services from those of others. Plaintiff's C Mark represents a most valuable asset owned by COLLEN IP.

## DEFENDANT'S INFRINGING ACTIVITIES

19.    Defendant is a well-known association of attorneys in the United States. It boasts hundreds of thousands of members. It is easily the largest association of attorneys in the United States, if not the world.

20.    In association with Defendant's services, Defendant has created multiple practice sections aimed toward each individual field of law. Each member of the Defendant can also subscribe to various individual practice sections. For example, there is an Intellectual Property Practice Section and an International Law Practice Section.

21.    Upon information and belief, members are required to pay dues to continue to their membership status. Additional dues may be necessary to join various practice sections.

22.    Upon information and belief, each practice section within Defendant's organization competes for funding and glory. Although Defendant is a not-for-profit organization, it undoubtedly maintains a substantial operating budget. Indeed its influence and seeming endless supply of resources and members is infamous among the United States legal industry. (Its influence it so powerful that the United States Department of Justice has investigated Defendant for engaging in anticompetitive conduct in violation of the Sherman Act). The ABA even evaluates nominees for the Supreme Court.

23.    Upon information and belief, each practice section and its respective members promote programs, recruit new talent, and cross-promote other subsections of Defendant. In furtherance of this effort, Defendant and its composite parts engage in

significant marketing activities, including mass mailings, and various electronic advertisements. Some of Defendant's practice sections have adopted their own logos.

24.      In particular, Defendant's International Law Section has adopted a stylized trademark logo which creates an identical commercial impression and a likelihood of confusion as to the source of the legal services and is confusingly similar to Plaintiff's C Mark. Defendant's mark consists of a white spiraling line that is set against a darker, square background.  Both marks consist of a royal blue color blended into a shade of green.  Defendant's mark was first used on June 4, 2005. A sample of Defendant's trademark is attached as Exhibit C and shown below:



25.      Defendant employs this logo at its website and in its advertisements, publications, and mass mailings. Upon information and belief, Defendant derives great benefit from use of this logo. This trademark is visually and conceptually similar to Plaintiff's C Mark:



26.      Plaintiff notified Defendant of its trademark registration in writing on several occasions. Defendant universally ignored Plaintiff's appeals for many months. Finally, after it ignored Plaintiff repeatedly, it responded with a blanket denial of

infringement. See collection of letters to Defendant and its executives, attached hereto as Exhibit D.

COUNT I

TRADEMARK INFRINGEMENT

27.     Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-26, inclusive of this Complaint and the acts of Defendants asserted therein as if fully recited in this paragraph.

28.     Without the consent or authorization of Plaintiff, Defendant has adopted and used a mark, as shown in Exhibit C ("Defendant's Mark"), which is confusingly similar to Plaintiff's C Mark (shown in Exhibit A) in connection with legal services in class 42, by placing such mark on the services, in advertising, packaging, Internet websites, or point of sale materials directly associated with the Defendant's services.

29.     Defendant is using Defendant's Mark without Plaintiff's consent or authorization, in a way which irreparably damages Plaintiff and is causing confusion, mistake and deception as to the source or origin of the services offered by Defendant, giving the impression that these services provided by Defendant are produced by, authorized by, distributed by or affiliated with Plaintiff, which in fact they are not.

30.     On information and belief, the Defendant's services are provided through the same or related trade channels, as the Plaintiff's services.

31.     On information and belief, Defendant's services are advertised and promoted through identical or highly related channels to those employed by the Plaintiff.

32.     On information and belief, Defendants have no present intention of terminating the activities complained of but, on the contrary, are continually seeking to expand such activities.

33.     Defendant's actions are eroding the connection by clients and consumers between Plaintiff, and Plaintiff's C Mark, a mark recognized as the single source for services sold under such mark.  The Plaintiff's reputation has thus been and will continue to be subject to the perils and hazards, which arise from Defendant's tortious activities, resulting in grave and irreparable harm to Plaintiff and to the consuming public and sector of law that Plaintiff specializes in.

34.     Defendant's acts create and further the likelihood that the public and those in the sector of law that Plaintiff specializes in will perpetuate the confusion as to sponsorship, source, origin, affiliation or association of the service of Defendants.

35.     Plaintiff has placed Defendants on notice of its infringement, in writing and Defendant has refused to discontinue their infringing activities.

36.     Defendant is willfully infringing Plaintiff's C Mark.

37.     Defendant's adoption and use of its Mark infringes Plaintiff's rights in the Plaintiff's C Mark as a result of Def

38.     Defendant's use of such mark on the same or confusingly similar goods and services to those upon which the Plaintiff applies its C Mark. Such use by the Defendants is likely to cause confusion, mistake or deception as to Plaintiff's C Mark and Defendant's use.

39.     Plaintiff is damaged as a result of Defendant's activities.

40.    Defendant's activities, as aforesaid, are in violation of 15 U.S.C. §1114.

COUNT II
COMMON LAW INFRINGEMENT

41.    Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-40 inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

42.    This count is for common law trademark infringement of Plaintiff's trademark rights in Plaintiff's C Mark and design.

43.    The Plaintiff has used, and has acquired considerable goodwill and distinctiveness, to its C Mark.  The mark has been advertised and promoted and otherwise used in commerce throughout the United States and globally, including this District, since its first use in November 13, 1999 and preceding Defendant's adoption and use of Defendant's Mark on or about June 4, 2005, attached hereto as Exhibit D.

44.    Plaintiff has extensively used Plaintiff's C Mark in commerce and has acquired a considerable and valuable goodwill and wide-scale recognition for its Mark. The public has come to associate Plaintiffs' C Mark with COLLEN IP and COLLEN IP's services.  In addition to Plaintiff's registered goods and services, it has used it's C Mark in connection with a variety of additional goods such as its website, golf balls, golf tees, golf markers, T-shirts, umbrellas, fleece jackets, fleece vests, hats, water bottles, coffee mugs, business cards, envelopes – domestic and air mail, and letterhead.

45.    Plaintiff's adoption of a family of marks, which incorporate elements of the C Mark and design, contribute to the likelihood that consumers attribute goods and services offered under the C Mark as emanating from the Plaintiff.

46.    Defendant's use of the Defendants Mark, on related and confusingly similar services, as alleged above, is highly damaging to the Plaintiff and its C Mark.

47.    Plaintiff has invested heavily in advertising and promotion of its C Mark goods and services in the United States and globally.

48.    Defendant's use of the Mark in conjunction with the same or similar goods and service as the Plaintiff in the same or similar channels of trade without Plaintiff's consent or authorization irreparably damages the Plaintiff and is causing confusion, mistake and deception as to the source or origin of the services offered by Defendant.

49.    Defendant has been placed on notice of the Plaintiff's C Mark, and of the damage engendered by Defendant's use of the same.

50.    Defendant's actions as aforesaid damage and threaten to further damage the value of the Plaintiff's C Mark and the goodwill associated with its trademarks.

## COUNT   III

## FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER THE LANHAM ACT

51.    Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-50 inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

52.    This count arises under 15 U.S.C. §1125(a).

53.    Defendant has used Defendant's Mark in a manner which is likely to cause confusion, mistake or deception, by virtue of its prominent use thereof in connection with Defendant's services.

13

54.     Defendant's use and/or association with its Mark represents a False Designation of Origin, as consumers and the intellectual property community are likely to associate Defendant's Mark with the Plaintiff and its well known and highly regarded use of C Mark as an indicator of source, quality and consistency.

55.     Consumers will believe that Defendant's services in conjunction with the infringing Mark is associated with, sponsored and/or endorsed by the Plaintiff, when in fact they are not.

56.     Defendant's use of their Mark erodes the connection between Plaintiff's C Mark as being the single source for Plaintiff's services offered under such mark. Plaintiff's reputation has thus been and will continue to be subject to the perils and hazards which arise from Defendant's tortious activities, resulting in grave irreparable harm to Plaintiff and the consuming public.

57.     Defendants have no connection whatsoever with the Plaintiff and Plaintiff has no control over the acts of Defendant, nor any responsibility for the acts of Defendant.

58.     Defendant's acts create and further the likelihood that the public will be confused as to sponsorship, source, affiliation or association of the services of Defendants.

59.     Defendant's use and/or association with Plaintiff's C Mark constitutes a false designation of origin, as consumers are likely to associate Defendant's Mark with Plaintiff.

60.    Defendant's use of the Mark constitutes false advertising to lead consumer to believe that Defendant's goods originate from the Plaintiffs when in fact they do not.

## DEMAND FOR JURY TRIAL

61.    Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by a Jury.

WHEREFORE, Plaintiff prays:

1.    That pursuant to 15 USC §1116 and the equity jurisdiction of this Court, Defendant and its officers, agents, employees, representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display or advertising of their goods or services under the its logo, or any other trademark in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiff's C Mark.

2.    That pursuant to 15 USC §1117, Defendant be directed to pay over to Plaintiff, any and all damages which they have sustained by consequence of Defendant's statutory and Common Law Trademark Infringement, False Designation of Origin, False Advertising, Unfair Competition and as enumerated herein.

3.    That Defendant and their officers, agents, employees, or representatives, and all persons in privity with Defendant not destroy but deliver up to this Court, pursuant to 15 U.S.C. §1118, all: dies, molds, letterheads, advertising materials, computer programs in any language or format (including HTML, Java or other formats for use in internet web pages), labels, packages, containers, name plates, and any other printed or electronic matter of any nature, and any products in their possession bearing or

using the trademark or any other trademark either alone or in combination with other words or symbols, or any colorable imitation of Plaintiff's C Mark, for the purposes of destruction thereof.

4.     That the conduct of Defendant complained of herein be declared willful and as a result the amounts of actual damages be trebled as provided for in 15 U.S.C. § 1117.

5.     That pursuant to 15 U.S.C. § 1117, Defendant be required to pay to Plaintiff the costs of this action, including its attorneys' fees and disbursements incurred.

6.     That Defendant be required to file with this Court and serve on Plaintiff a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the terms of the permanent injunction.

7.     That Defendant be enjoined from any sale of goods or services which dilute the distinctive nature of the C Mark pursuant to 15 U.S.C. § 1025.

8.     That Plaintiff be granted such other and further relief as this Court deems just and equitable.

Respectfully submitted
for Plaintiff,

By:     _Matthew C. Wagner_

Matthew C. Wagner (Bar No. 460298)
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941 5668
(914) 941-6091 (facsimile)

Dated:  _10/12/07_

EXHIBIT A

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

## United States Patent and Trademark Office

Reg. No. 2,495,570
Registered Oct. 9, 2001

### SERVICE MARK
### PRINCIPAL REGISTER



COLLEN LAW ASSOCIATES, P.C. (NEW YORK CORPORATION)
ONE SCARBOROUGH STATION PLAZA
SCARBOROUGH, NY 105100806

FOR: LEGAL SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 11-13-1999; IN COMMERCE 11-17-1999.

THE DRAWING IS LINED FOR THE COLORS BLUE AND GREEN. NO CLAIM IS MADE AS TO COLOR.

SER. NO. 75-854,018, FILED 11-19-1999.

DORITT L. CARROLL, EXAMINING ATTORNEY

EXHIBIT B



Collen IP - Intellectual Property Law Firm and Business Consultants - Microsoft Internet Explorer

File  Edit  View  Favorites  Tools  Help

Back  •  🔘  •  ⊠  ⓘ  🔍 Search  ⭐ Favorites  ⓔ  🖶  ▾  📄  ▾  🖸  ⊠  ▾  🖸

Address 🖉 http://www.collenip.com/                                          ⊠ Go  Links  »  Time Matters 🖸 🖸

© COLLEN *IP*  Home    About Collen IP  ►  Professionals  ►  Practice Areas  ►  Client Services  ►  News and Inform
    INTELLECTUAL PROPERTY LAW

## From concept ... to courthouse™

Collen IP knows how to help companies identify and protect their intellectual property. Whether your company is built on its brands, its technologies and know-how, its creative content, or some combination of all of these, our experienced lawyers and professionals will understand your business. We understand the difficult choices your business requires you to make every day, choices which will compare not just the benefits of action but the costs of action and inaction. More...

INTELLECTUAL PROPERTY LAW

**Practice Areas**

IP Litigation

Trademarks

Copyrights

Patents

IT and E-commerce

Privacy and Data Security

**Representative Ma**

*Fashion and Luxury Goods*

*Consumer Products*

*Art and Entertainment*

*Services and Industry*

*Food and Beverages*

*View All*

Legal Policy | Privacy Policy

Copyright © Collen IP 2007. All Rights Reserved.

🖉 Done                                                                    🌐 Internet



Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com

EXHIBIT C





ABA Section of
**International Law**
*Your Gateway to International Practice*

A conference presented by the Litigation Committee of the Dispute Resolution Section of the International Bar Association and the Section of International Law of the American Bar Association

# Class actions at a crossroads:

## Europe's choice between its own and the American model



# 24-25 May 2007
# Grand Hotel Plaza, ROME, Italy



## Topics will include:

- The current status of class and collective actions in Europe

- What European legislators can learn from the US and Canadian experience

- Problems in incorporating US-style class actions into Europe

- European legislative developments on collective actions

- Class certification – a mock hearing and roundtable discussion

## Who should attend?

Litigators, corporate counsel, judges, academics, consumer association representatives and policy-makers.

### Up to 9 CPD hours available*

* As per the Law Society of England and Wales. The number of CPD points/ hours available may vary for other bar associations and law societies depending on their criteria.

**US CLE**



ABA International - International Projects - Microsoft Internet Explorer

File  Edit  View  Favorites  Tools  Help

Back  •  Search  Favorites

Address  http://www.abanet.org/intlaw/

Go   Links   »   Time Matters

## American Bar Association
### Defending Liberty, Pursuing Justice

**Member Login**

ABA Home
Join
Web Store
About the ABA

Section Home
Leadership
Committees
Calendar
Membership
Policy
Publications
International
Projects

Student
Headquarters
Pathways to
Employment
Internships

Search:          This Entity  ▼  Go  Advanced Search
                                    Topics A-Z

Print This | E-mail This

### Section of International Law
*Your Gateway to International Practice*

**From the Chair**

Dear Members:

As your first Chair from the "other side of the pond," I am pleased to welcome you to a new ABA/Section year. On behalf of the leadership of the ABA Section of International Law (ABA International), I encourage you to get involved – we provide you with any number of opportunities. With more than sixty substantive committees (more than two dozen of which offer regular electronic newsletters), loads of internationally-focused CLEs (including remote options), and publications of all types, ABA International provides you with easy access to all areas of international practice. For those who want to be more active, please reach out to our Committee Leaders and Section Officers. We're keen to get you involved!

– *Jeffrey B. Golden, Chair, Section of International Law, 2007-2008*

Click here to view a video greeting from the Chair: Windows Media (.wmv, 3.73 MB) RealMedia (.rm, 3.17 MB)

Past e-Newsletter Issues

**Section Event Calendar**

| | | |
|---|---|---|
| Oct. 11-13 | Register Today for the ILSA Fall Conference in Denver | Denver, CO |
| | 8th Annual American Bar Association Section of International Law Breakfast | |

Internet

**Shannon Goring**

Subject: FW: 2006 Spring Meeting, Register Today!

**From:** ABA International [mailto:intlaw@abanet.org]
**Sent:** Tuesday, January 17, 2006 3:19 PM
**To:** Jane Collen
**Subject:** 2006 Spring Meeting, Register Today!



By now you should have already marked your calendars for the **ABA International Spring Meeting** April 5-8, 2006 at The Waldorf=Astoria in New York.

CLICK HERE to register at the discounted **early bird rate and ensure your place at the Spring Meeting!**

WHAT WILL THE INTERNATIONAL SPRING MEETING OFFER YOU? ...

- A unique **opportunity to network** with leading attorneys, government officials, in-house counsel and legal scholars.
- **70 blockbuster & Showcase programs** on numerous international law topics of interest to a wide-range of attorneys organized in seven separate program tracks. CLICK HERE to view the (7) Meeting Tracks.
- A Discounted **Registration** fee that entitles you to attend as many sessions throughout the three meeting days as you wish. **Early bird Registration lasts until March 10th.** CLICK HERE to register online today!
- Earn up to **24 CLE credits** - Attend all three days and potentially earn sufficient credit (including ethics credit) to satisfy your 2-year NY CLE obligation, including ethics credit.
- A variety of **social functions** providing ample opportunities to network including: **Wednesday International Reception and Wine Tasting, Thursday Reception at The Association of the Bar of the City of New York and Friday Reception at New York University Law School** along with three luncheons with distinguished speakers.

**- Important Dates to Remember -**

- Early Bird Registration Deadline: March 10, 2006
- Reservations at The Waldorf=Astoria: March 14, 2006
- Discounted ABA Travel Arrangements CLICK HERE.

NEW! We are introducing GROUP DISCOUNTS for the Spring Meeting.
For more information on these discounts contact Lauren Newman.

Please forward this email on to any interested colleagues and friends that
would be interested in attending.

## We look forward to seeing you in New York!

David A. Schwartz, Wachtell, Lipton, Rosen & Katz, *New York, NY*
Soraya E. Bosi, Fraser Milner Casgrain LLP & Associate Director of the ACC-
Greater New York, *New York, NY*
Victor Xercavins, Cuatrecasas, *New York, NY*
2006 Spring Meeting Co-Chairs

*Join the Section of International Law at Other Programs:*
*Register early and make flight arrangements for the ABA Annual Meeting in Honolulu, Hawaii,*
*August 4-8.*



Home | Overview | Agenda | Registration | Travel Info | Sponsorship | Cooperating Entities | Exhibitors

EXHIBIT D



COLLEN *IP*
INTELLECTUAL PROPERTY LAW

Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com

E-MAIL: JANECOLLEN@CollenIP.COM

September 19, 2005

**VIA EMAIL:  intlaw@abanet.org**
**CONFIRMATION BY MAIL**
ABA Section of International Law and Practice
740 15th Street, N.W.
Washington, DC 20005
Attn: Michael H. Byowitz,
Chair, Section of International Law

> Re: Potential Trademark Infringement
> of U.S. Registration No. 2,495,570
> Our Ref.:    T-94505

Dear Sir:

As a member of the ABA section of International Law and Practice, I receive your bulletin by email. I was dismayed to see your new logo. As you can see from our letterhead above, my firm Collen IP, Intellectual Property Law, P.C., is the owner of the "C (stylized)" mark, United States Trademark Registration No. 2,495,570.

Our mark is registered in Class 42, for "legal services." You have recently adopted similar design mark to advertise the International Law section of the ABA. Use of this trademark is likely to cause confusion, mistake, and deception with regard to our mark. Both marks consist of a white spiraling line that is set against a darker, square background. Both marks consist of a royal blue color blended into a shade of green. These components, as a whole, create an identical commercial impression and a likelihood of confusion as to the source of the legal services.

In order to avoid further damage to the "C (stylized)" trademark, we must respectfully demand that you immediately cease and desist all use of this trademark.

I further need your written assurance that you recognize the prior rights of Collen IP, Intellectual Property Law, P.C. to the "C (stylized)" trademark, and that you will never use, nor register, nor seek to register, the mark in question, alone or in combination with other verbal or graphic elements.

We look forward to hearing from you, with your prompt cooperation.

Very truly yours,
Collen *IP*

*Shannon E. Going*

for Jane F. Collen

JFC/SEG:sf

**CC:** Michael S. Greco (by mail only)
President
American Bar Association
321 North Clark Street
Chicago, IL 60610



COLLEN *IP*
INTELLECTUAL PROPERTY LAW

Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com

E-MAIL: JaCOLLEN@CollenIP.COM

March 27, 2006

VIA EMAIL:  intlaw@abanet.org
CONFIRMATION BY MAIL
ABA Section of International Law and Practice
740 15th Street, N.W.
Washington, DC 20005
Attn: Michael H. Byowitz,
Chair, Section of International Law

Re: Potential Trademark Infringement
of U.S. Registration No. 2,495,570
Our Ref.:    T-94505

Dear Sir:

We do not appear to have your response to our prior letter of September 19, 2005. I enclose a copy for your convenient review. I also note that a recent email alerting me, as a member of this section of the ABA, to the Spring Meeting evidences that you continue to use the new confusingly similar trademark.

This mark remains prominently displayed and still utilizes the similar design and coloring of my firm's trademark. I enclose a copy of your email.

Please cease all further use of this trademark and provide us with written assurance that you will never use, register, nor seek to register, the mark in question, alone or in combination with other verbal or graphic elements.

We look forward to hearing from you. We hope to resolve this issue promptly and amicably.

Very truly yours,
Collen *IP*

Jane F. Collen

JFC/JMC/SEG: sf

Enclosures:2006 Spring Meeting E-mail
Copy of 9/19/05 letter

CC: Michael S. Greco (by mail only)
President
American Bar Association
321 North Clark Street
Chicago, IL 60610



**© COLLEN IP**
INTELLECTUAL PROPERTY LAW

Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com

E-MAIL: JaCOLLEN@CollenIP.COM

December 12, 2006

**VIA EMAIL: intlaw@abanet.org; denixross@debevoise.com**
**CONFIRMATION BY MAIL**
ABA Section of International Law and Practice
C/o Ms. Deborah Enix-Ross, Chair, Section of International Law
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

> Re: Potential Trademark Infringement
> of U.S. Registration No. 2,495,570
> Our Ref.:    T-94505

Dear Ms. Enix-Ross:

We write to you regarding a problem we raised previously and which to date remains without resolution.

On September 5, 2005, and again on March 27, 2006, we put the ABA Section of International Law on notice that it was infringing our registered United States Trademark. The registration protects the design incorporated into our letterhead above. The design employed by the ABA International Law Section is very similar to our mark. Both marks employ identical shades of green and blue. Both marks consist of a globe outlined in white within a square. Both marks relate to legal services. The two marks are likely to cause confusion in the marketplace.

We have not received any response from the ABA regarding our prior letters, which we enclose again for your convenience. Frankly, we are (as you would expect) shocked that the ABA has paid not attention to this matter and continued using the offending mark. Several lawyers in our firm are members of the ABA, and one is in a leadership position. We would have expected the ABA to treat this issue more carefully as a matter of courtesy and propriety to its members, let alone the prospect of violating federal statutes. (15 U.S.C. §§ 1114, 1125.)

Please resolve this issue promptly.

We look forward to hearing from you.

Very truly yours,
COLLEN *IP*

Jane F. Collen

JFC/JMC/BJR
Enclosures: Copy of 9/19/05, 3/27/2006 letters

**CC:** Michael S. Greco (by mail only)
President
American Bar Association
321 North Clark Street
Chicago, IL 60610

2



**Defending Liberty
Pursuing Justice**

CATHERINE A. DAUBARD
Deputy General Counsel

AMERICAN BAR ASSOCIATION

321 North Clark Street
Chicago, Illinois 60610-4714
(312) 988-5213
FAX: (312) 988-5217

June 7, 2007

Ms. Jane F. Collen
Collen IP Intellectual Property Law, P.C.
80 South Highland Avenue Ossining-on-Hudson
Westchester County, New York 10562

Re:    **Trademark Demand**

Dear Ms. Collen:

We are in receipt of your letters regarding the use by the American Bar Association of its mark ABA SECTION OF INTERNATIONAL LAW (& DESIGN) (the ABA mark) used in connection with educational services relating to international law which you believe may cause a likelihood of confusion with Collen IP's design logo (the Collen mark) used in connection with its intellectual property legal services. As a first matter, we wish to assure you that the American Bar Association respects the intellectual rights of others. It has no interest in treading on Collen IP's trademark rights, trading on Collen IP's goodwill in its mark, or desire to cause consumer confusion. A review of the relevant *DuPont* factors in *In re E.I. DuPont de Nemours Co.*, 476 F.2d 1357 (CCPA 1973), shows that continued concurrent use of the marks is not problematic.

As a first matter, we do not agree that the marks look alike or create the same commercial impression. The ABA mark includes a logo design of a stylized eclipsed globe surrounded by ribbons indicating movement of stars, an image in keeping with the theme of global issues. In addition, the ABA mark always appears as a composite with the words "ABA SECTION OF INTERNATIONAL LAW" and logo, and sometimes with the accompanying slogan "YOUR GATEWAY TO INTERNATIONAL PRACTICE."   In contrast, the Collen mark appears to be a stylized "C" or "at" symbol.

Turning to the nature of the goods and services provided under the marks, the American Bar Association Section of International Law and the Collen IP Group occupy different fields. While both parties provide services in the field of law, the American Bar Association is a well-known not-for-profit corporation that provides educational services for licensed U.S. attorneys.  The ABA mark is used in connection with the sub-specialty of international law that focuses on organizing conferences, providing publications, and advancing the interests of the U.S. bar as amicus on areas of interest important to the American Bar Association's

Jane F. Collen
June 7, 2007
Page 2

constituents. Collen IP is advertised as a law firm and business consultancy that focuses on intellectual property. The relevant public seeking legal advice in the specialized field of intellectual property law would not mistake the services offered by the American Bar Association for intellectual property legal advice and business services offered by Collen IP. The American Bar Association is not usurping the market created by Collen IP because it simply does not offer the same services.

Neither would there be a problem of initial interest confusion. The consumer looking for intellectual property legal and business advice would not be side tracked by finding the ABA mark and not going further to seek Collen's intellectual property services. The American Bar Association could not meet such a consumer's need for intellectual property legal services and business consulting.

The channels of trade in which the marks move are also different. The American Bar Association's advertising is targeted to qualified, licensed attorneys within the U.S. for the purpose of generating membership in its international law section, a very small slice of the professional public. The general public is excluded in the sense that membership in the American Bar Association International Law Section has no meaning outside of practicing international law. The relevant consumer from Collen IP's perspective would include both sophisticated and unsophisticated consumers seeking specific advice on problems of intellectual property. The American Bar Association's relevant consumers are highly sophisticated specialists in the field of international law. Collen's more sophisticated consumers may be members of the American Bar Association and as such, would have the clear ability to differentiate the services provided under each mark. Collen's more unsophisticated consumer would likely at least be able to differentiate between a law firm and a legal non-profit corporation that does not provide legal services.

The American Bar Association has not received any evidence of actual confusion between the marks. It has only received Collen IP's demand that such confusion is likely to occur. In fact, there has been approximately three years of concurrent use of the ABA mark and the Collen mark during which time the American Bar Association has not received any indication of confusion.

The market interface of the ABA mark and the Collen mark actually diminishes any likelihood of confusion. For example, when searching for services on the Internet, the public would not be searching for design logos, but for key words. In such a search, Collen IP's website is likely to surface on the key words "intellectual property law firms/lawyers." The American Bar Association's website would not surface at all. In fact, the American Bar Association has a separate composite mark for its intellectual property section. Even if the marks were to appear in the same legal journals or trade publications, there is no risk of confusion. Indeed, the needs of the American Bar Association's targeted audience and the needs of Collen's target audience are different.

Jane F. Collen
June 7, 2007
Page 3


In summary, given the difference in appearance, sound and connotation of the marks, and the difference in the services offered under the marks, we do not believe there is any potential for confusion.

We trust this letter addresses your concerns. However, if you wish to discuss this further, please give me a call.

Very truly yours,

Catherine Daubard
Deputy General Counsel

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Westchester, NY
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Matthew C. Wagner, COLLEN IP Intellectual Property Law, P.C., 80 So. Highland Avenue, Ossining, NY 10562 (914) 941-5668

## DEFENDANTS

AMERICAN BAR ASSOCIATION

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. *Antitrust*

☐ 410 Antitrust

### ○ B. *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*        OR        ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☒ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Trademark Infringement and Unfair Competition  15 U.S.C. 1114; 15 U.S.C. 1125

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐   NO ☒   If yes, please complete related case form.

DATE __10/12/07__    SIGNATURE OF ATTORNEY OF RECORD *Matthew C. Wal*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.