UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN BAR ASSOCIATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: <br> Judge: |

**COMPLAINT FOR TRADEMARK INFRINGEMENT,
FALSE DESIGNATION OF ORIGIN
TRADEMARK DILUTION, UNFAIR COMPETITION, and
INJUNCTIVE and OTHER RELIEF**

The Plaintiff, COLLEN IP, Intellectual Property Law, P.C., ("COLLEN IP" or "Plaintiff") brings this action to obtain injunctive relief and recompense for past and ongoing loss and damage sustained as a result of Defendant's American Bar Association, ("ABA" or "Defendant") acts of trademark infringement, below are the marks at issue.

I. **INTRODUCTION**

COLLEN IP is a leading New York intellectual property law firm, located in Westchester County, New York. For many years the Plaintiff has used its principal design mark in association with the provision of its legal and consulting services, as shown below:



This design mark was registered on October 9, 2001 and is incontestable, U.S. Registration No. 2,495,570. Several attorneys at COLLEN IP are members of the ABA and its section of International Law. They were dismayed to find the ABA using a logo confusingly similar to Plaintiff's design.



Plaintiff immediately attempted to initiate a dialogue to resolve this issue. Plaintiff was loath to initiate legal action.  However, its various and repeated attempts to resolve this dispute with the ABA and its leadership went unanswered (literally) for months and years. Plaintiff raised its concern in several letters to the ABA on September 19, 2005, March 27, 2006 and December 12, 2006.  When the ABA finally responded to Plaintiff's letters on June 7, 2007, it offered no consolation. Plaintiff has been left with no device but to file this complaint to protect its own intellectual property – its own logo, a registered incontestable trademark.

As and for its Complaint against the Defendant, Plaintiff hereby state and alleges the following:

### II. PARTIES

1. Plaintiff, COLLEN IP, is a professional corporation duly organized and existing under the laws of the State of New York, located at 80 South Highland Avenue, Ossining, New York, 10562.

2. On information and belief, Defendant American Bar Association is a not-for-profit corporation duly organized and existing under the laws of the State of Illinois, located at 321 North Clark Street, Chicago, Illinois 60610. The ABA maintains a Section of International Law, with its principal office located at 740 15th Street, NW, Washington, D.C. 20005.

### III. JURISDICTION AND VENUE

3. This action is for Trademark Infringement pursuant to the Lanham Act §32(1), 15 U.S.C. §1114(1)(a), False Designation of Origin, Unfair Competition and Trademark Dilution arising under the Lanham Act §43(a), 15 U.S.C. §1125, under the Common Law.

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. § 1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts), and 15 U.S.C. § 1114, § 1125. This Court also has supplemental jurisdiction over the asserted claim of common law Trademark Infringement, pursuant to 28 U.S.C. § 1367(a), because such claims are so related to those claims under which the Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, and upon information and belief Defendant and its principles conduct substantial business and reside in this District.

**IV. FACTS**

6. COLLEN *IP* is a professional corporation, which engages in the practice of law in the field of intellectual property, litigation, and related business concerns, such as transactions, licensing and contracting. Plaintiff represents many famous internationally known businesses and brands. Indeed, Plaintiff's clientele consists of many foreign businesses and foreign law firms (and their respective clients) who Plaintiff represents before several courts of the United States, the United States Patent and Trademark Office, the United States Copyright Office, and in other United States administrative agencies and tribunals.

7. Plaintiff was founded in 1996 by principals Jess M. Collen and Jane F. Collen. Over the past decade, the law firm has grown rapidly from a firm of five attorneys and staff, to a law firm of more than thirty-five employees, including attorneys, law clerks, professional and support staff. In this time, Plaintiff and its active intellectual property practice has become well-known. Plaintiff has represented clients in many federal lawsuits across the United States, including its home jurisdictions, the Southern District of New York and the United States Circuit Court of Appeals for the Second Circuit, the Eastern, Western, and Northern Districts of New York, the Districts of New Jersey, Connecticut, Massachusetts, Colorado, Nevada, the Eastern and Southern Districts of Texas, the Middle and Southern Districts of Florida, the Northern, Central,

and Southern Districts of California, the Eastern District of Michigan, the Northern District of Illinois, the Northern District of Indiana, the Western and Eastern Districts of Pennsylvania, the Northern District of Georgia, the Western District of North Carolina, the Eastern District of Tennessee, the United States Circuit Court of Appeals for the Second, Seventh, Ninth, and Federal Circuits and others.

8. Plaintiff and its attorneys are active within organizations in the legal profession, such as the International Trademark Association, regularly participating in speaking engagements, sponsoring and hosting seminars for Continuing Legal Education, and engaging in academic commentary and publications. In the past year alone, Plaintiff's attorneys participated, hosted, and/or organized six Continuing Legal Education seminars for organizations such as the International Trademark Association, Pace University School of Law, and the Westchester County Bar Association. Plaintiff has received awards from the legal community in recognition of its services and expertise. For example, in 2003, Jess M. Collen was awarded Top 10 Trademark Lawyers in the United States by the Trademark Insider and the firm was ranked in the top 200 firms in the United States.

9. Plaintiff has expanded its business and has a client base that encompasses famous internationally recognized businesses and their intellectual property brands, such as SWATCH, OMEGA, KLM, JVC, BABYBEL, LONGINES, TISSOT, YSL YVES SAINT LAURENT, the Andy Warhol Foundation and ASPEX Eyewear.

10. Plaintiff has a diversified base of international clients, representing corporations from essentially every industrialized country in the world, such as the

United Kingdom, France, Japan, and India, as well as emerging countries, such as Guyana.

11.     Throughout Plaintiff's existence, Plaintiff has established itself among the United States and global intellectual property community as the provider of high quality and reliable legal services.

12.     In addition to representing clients in the United States, Plaintiff assists its clients to obtain intellectual property protection in other jurisdictions around the world, either through execution and operation of applicable treaties, or through coordinating efforts with legal professionals who are licensed to practice law in foreign territories.

13.     A significant portion of Plaintiff's practice is international in nature. For example, for every domestic client who needs protection of its intellectual property rights abroad, Plaintiff coordinates global enforcement strategies across borders. For example, Plaintiff coordinated global registration of Beyonce Knowles's trademark for her new clothing line, HOUSE OF DEREON, seeking trademarks registrations in numerous countries throughout the world. Likewise, Plaintiff implements the American aspects of the global protection strategies for foreign law firms and clients. For example, Plaintiff represented the manufacturer of TOMTOM brand navigation systems in the United States Patent and Trademark Office, which was only one element of an international dispute spanning eight countries. Plaintiff also represents the brands of television reality shows FEAR FACTOR, BIG BROTHER, SURVIVOR and DEAL OR NO DEAL which are broadcast in the United States and internationally.

14.     In association with its legal services and consistent with its expertise in brand development and protection, Plaintiff has adopted and registered its trademark

known as the C stylized trademark (the "C Mark") registration no. 2,495,570, in the Class 42, for "legal services," with first use in November 13, 1999, as set forth below:



A true and correct copy of Plaintiff's trademark registration is attached hereto as Exhibit A.

15.   Plaintiff incorporates it C Mark on its letterhead, business cards, website, newsletter, correspondence, and other written materials. A sample of these materials is attached hereto as Exhibit B.

16.   Plaintiff's registered trademark has been advertised and promoted and otherwise used in commerce throughout the United States and globally, including this District, since at least as early as 1996.

17.   Federal registration of a trademark is *prima facie* evidence of a Registrant's exclusive right to use the registered trademark in commerce in connection with the goods or services specified in the certificate, pursuant to 15 U.S.C. § 1057(b).

18.   Plaintiff's C Mark has acquired a distinctiveness and secondary meaning signifying Plaintiff and its services. The public and trade have come to rely on the Plaintiff's C Mark to distinguish its services from those of others. Plaintiff's C Mark represents a most valuable asset owned by COLLEN IP.

## **DEFENDANT'S INFRINGING ACTIVITIES**

19. Defendant is a well-known association of attorneys in the United States. It boasts hundreds of thousands of members. It is easily the largest association of attorneys in the United States, if not the world.

20. In association with Defendant's services, Defendant has created multiple practice sections aimed toward each individual field of law. Each member of the Defendant can also subscribe to various individual practice sections. For example, there is an Intellectual Property Practice Section and an International Law Practice Section.

21. Upon information and belief, members are required to pay dues to continue to their membership status. Additional dues may be necessary to join various practice sections.

22. Upon information and belief, each practice section within Defendant's organization competes for funding and glory. Although Defendant is a not-for-profit organization, it undoubtedly maintains a substantial operating budget. Indeed its influence and seeming endless supply of resources and members is infamous among the United States legal industry. (Its influence it so powerful that the United States Department of Justice has investigated Defendant for engaging in anticompetitive conduct in violation of the Sherman Act). The ABA even evaluates nominees for the Supreme Court.

23. Upon information and belief, each practice section and its respective members promote programs, recruit new talent, and cross-promote other subsections of Defendant. In furtherance of this effort, Defendant and its composite parts engage in

significant marketing activities, including mass mailings, and various electronic advertisements. Some of Defendant's practice sections have adopted their own logos.

24. In particular, Defendant's International Law Section has adopted a stylized trademark logo which creates an identical commercial impression and a likelihood of confusion as to the source of the legal services and is confusingly similar to Plaintiff's C Mark. Defendant's mark consists of a white spiraling line that is set against a darker, square background. Both marks consist of a royal blue color blended into a shade of green. Defendant's mark was first used on June 4, 2005. A sample of Defendant's trademark is attached as Exhibit C and shown below:



25. Defendant employs this logo at its website and in its advertisements, publications, and mass mailings. Upon information and belief, Defendant derives great benefit from use of this logo. This trademark is visually and conceptually similar to Plaintiff's C Mark:



26. Plaintiff notified Defendant of its trademark registration in writing on several occasions. Defendant universally ignored Plaintiff's appeals for many months. Finally, after it ignored Plaintiff repeatedly, it responded with a blanket denial of

infringement. See collection of letters to Defendant and its executives, attached hereto as Exhibit D.

COUNT I
TRADEMARK INFRINGEMENT

27. Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-26, inclusive of this Complaint and the acts of Defendants asserted therein as if fully recited in this paragraph.

28. Without the consent or authorization of Plaintiff, Defendant has adopted and used a mark, as shown in Exhibit C ("Defendant's Mark"), which is confusingly similar to Plaintiff's C Mark (shown in Exhibit A) in connection with legal services in class 42, by placing such mark on the services, in advertising, packaging, Internet websites, or point of sale materials directly associated with the Defendant's services.

29. Defendant is using Defendant's Mark without Plaintiff's consent or authorization, in a way which irreparably damages Plaintiff and is causing confusion, mistake and deception as to the source or origin of the services offered by Defendant, giving the impression that these services provided by Defendant are produced by, authorized by, distributed by or affiliated with Plaintiff, which in fact they are not.

30. On information and belief, the Defendant's services are provided through the same or related trade channels, as the Plaintiff's services.

31. On information and belief, Defendant's services are advertised and promoted through identical or highly related channels to those employed by the Plaintiff.

32. On information and belief, Defendants have no present intention of terminating the activities complained of but, on the contrary, are continually seeking to expand such activities.

33. Defendant's actions are eroding the connection by clients and consumers between Plaintiff, and Plaintiff's C Mark, a mark recognized as the single source for services sold under such mark. The Plaintiff's reputation has thus been and will continue to be subject to the perils and hazards, which arise from Defendant's tortious activities, resulting in grave and irreparable harm to Plaintiff and to the consuming public and sector of law that Plaintiff specializes in.

34. Defendant's acts create and further the likelihood that the public and those in the sector of law that Plaintiff specializes in will perpetuate the confusion as to sponsorship, source, origin, affiliation or association of the service of Defendants.

35. Plaintiff has placed Defendants on notice of its infringement, in writing and Defendant has refused to discontinue their infringing activities.

36. Defendant is willfully infringing Plaintiff's C Mark.

37. Defendant's adoption and use of its Mark infringes Plaintiff's rights in the Plaintiff's C Mark as a result of Def

38. Defendant's use of such mark on the same or confusingly similar goods and services to those upon which the Plaintiff applies its C Mark. Such use by the Defendants is likely to cause confusion, mistake or deception as to Plaintiff's C Mark and Defendant's use.

39. Plaintiff is damaged as a result of Defendant's activities.

40. Defendant's activities, as aforesaid, are in violation of 15 U.S.C. §1114.

## COUNT II
## COMMON LAW INFRINGEMENT

41. Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-40 inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

42. This count is for common law trademark infringement of Plaintiff's trademark rights in Plaintiff's C Mark and design.

43. The Plaintiff has used, and has acquired considerable goodwill and distinctiveness, to its C Mark. The mark has been advertised and promoted and otherwise used in commerce throughout the United States and globally, including this District, since its first use in November 13, 1999 and preceding Defendant's adoption and use of Defendant's Mark on or about June 4, 2005, attached hereto as Exhibit D.

44. Plaintiff has extensively used Plaintiff's C Mark in commerce and has acquired a considerable and valuable goodwill and wide-scale recognition for its Mark. The public has come to associate Plaintiffs' C Mark with COLLEN IP and COLLEN IP's services. In addition to Plaintiff's registered goods and services, it has used it's C Mark in connection with a variety of additional goods such as its website, golf balls, golf tees, golf markers, T-shirts, umbrellas, fleece jackets, fleece vests, hats, water bottles, coffee mugs, business cards, envelopes – domestic and air mail, and letterhead.

45. Plaintiff's adoption of a family of marks, which incorporate elements of the C Mark and design, contribute to the likelihood that consumers attribute goods and services offered under the C Mark as emanating from the Plaintiff.

46. Defendant's use of the Defendants Mark, on related and confusingly similar services, as alleged above, is highly damaging to the Plaintiff and its C Mark.

47. Plaintiff has invested heavily in advertising and promotion of its C Mark goods and services in the United States and globally.

48. Defendant's use of the Mark in conjunction with the same or similar goods and service as the Plaintiff in the same or similar channels of trade without Plaintiff's consent or authorization irreparably damages the Plaintiff and is causing confusion, mistake and deception as to the source or origin of the services offered by Defendant.

49. Defendant has been placed on notice of the Plaintiff's C Mark, and of the damage engendered by Defendant's use of the same.

50. Defendant's actions as aforesaid damage and threaten to further damage the value of the Plaintiff's C Mark and the goodwill associated with its trademarks.

<u>COUNT III</u>

<u>FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER THE LANHAM ACT</u>

51. Plaintiff restates and re-avers each and every allegation contained in paragraphs 1-50 inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

52. This count arises under 15 U.S.C. §1125(a).

53. Defendant has used Defendant's Mark in a manner which is likely to cause confusion, mistake or deception, by virtue of its prominent use thereof in connection with Defendant's services.

54. Defendant's use and/or association with its Mark represents a False Designation of Origin, as consumers and the intellectual property community are likely to associate Defendant's Mark with the Plaintiff and its well known and highly regarded use of C Mark as an indicator of source, quality and consistency.

55. Consumers will believe that Defendant's services in conjunction with the infringing Mark is associated with, sponsored and/or endorsed by the Plaintiff, when in fact they are not.

56. Defendant's use of their Mark erodes the connection between Plaintiff's C Mark as being the single source for Plaintiff's services offered under such mark. Plaintiff's reputation has thus been and will continue to be subject to the perils and hazards which arise from Defendant's tortious activities, resulting in grave irreparable harm to Plaintiff and the consuming public.

57. Defendants have no connection whatsoever with the Plaintiff and Plaintiff has no control over the acts of Defendant, nor any responsibility for the acts of Defendant.

58. Defendant's acts create and further the likelihood that the public will be confused as to sponsorship, source, affiliation or association of the services of Defendants.

59. Defendant's use and/or association with Plaintiff's C Mark constitutes a false designation of origin, as consumers are likely to associate Defendant's Mark with Plaintiff.

60. Defendant's use of the Mark constitutes false advertising to lead consumer to believe that Defendant's goods originate from the Plaintiffs when in fact they do not.

## DEMAND FOR JURY TRIAL

61. Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by a Jury.

WHEREFORE, Plaintiff prays:

1. That pursuant to 15 USC §1116 and the equity jurisdiction of this Court, Defendant and its officers, agents, employees, representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display or advertising of their goods or services under the its logo, or any other trademark in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiff's C Mark.

2. That pursuant to 15 USC §1117, Defendant be directed to pay over to Plaintiff, any and all damages which they have sustained by consequence of Defendant's statutory and Common Law Trademark Infringement, False Designation of Origin, False Advertising, Unfair Competition and as enumerated herein.

3. That Defendant and their officers, agents, employees, or representatives, and all persons in privity with Defendant not destroy but deliver up to this Court, pursuant to 15 U.S.C. §1118, all: dies, molds, letterheads, advertising materials, computer programs in any language or format (including HTML, Java or other formats for use in internet web pages), labels, packages, containers, name plates, and any other printed or electronic matter of any nature, and any products in their possession bearing or

using the trademark or any other trademark either alone or in combination with other words or symbols, or any colorable imitation of Plaintiff's C Mark, for the purposes of destruction thereof.

4. That the conduct of Defendant complained of herein be declared willful and as a result the amounts of actual damages be trebled as provided for in 15 U.S.C. § 1117.

5. That pursuant to 15 U.S.C. § 1117, Defendant be required to pay to Plaintiff the costs of this action, including its attorneys' fees and disbursements incurred.

6. That Defendant be required to file with this Court and serve on Plaintiff a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the terms of the permanent injunction.

7. That Defendant be enjoined from any sale of goods or services which dilute the distinctive nature of the C Mark pursuant to 15 U.S.C. § 1025.

8. That Plaintiff be granted such other and further relief as this Court deems just and equitable.

Respectfully submitted
for Plaintiff,

By: _____
Matthew C. Wagner (Bar No. 460298)
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941 5668
(914) 941-6091 (facsimile)

Dated: 10/12/07