**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COLLEN IP, INTELLECTUAL ) 
PROPERTY LAW, P.C., ) 
 ) 
      Plaintiff, ) 
 ) 
      v. )      Civil Action No. 07-1861 (ESH)
 ) 
AMERICAN BAR ASSOCIATION, ) 
 ) 
      Defendant. ) 

**DEFENDANT'S OPPOSITION TO MOTION**
**FOR 90-DAY EXTENSION OF TRIAL CALENDAR**

Defendant opposes Plaintiff's Motion for 90-Day Extension of Trial Calendar.

Responding to the numbered paragraphs in Plaintiff's Motion, Defendant states as

follows:

(1)      It is correct that mediation and negotiation between the parties failed to

result in a settlement.  However, Plaintiff was on notice shortly after the March 13

mediation conference that Defendant was unwilling to accept Plaintiff's proposal, as

documented by the e-mail dated April 10, 2008, from undersigned counsel to

Plaintiff's counsel, appended hereto as Exhibit A; and Plaintiff by then had

conclusively rejected Defendant's proposal.  Moreover, the mediation period did not

close until June 30, 2008.  Plaintiff has therefore already benefited from the extension

of the trial calendar that resulted from the mediation period.

(2)      Plaintiff's statement that "limited discovery responses have been

exchanges" is misleading.  It is true that Plaintiff has provided a "limited discovery

response."  In fact, Plaintiff has refused to answer Defendant's discovery requests as

illustrated by the frivolous objections and contumacious answers in Plaintiff's

response to Defendant's interrogatories appended hereto as Exhibit B.  In contrast, there is nothing "limited" about the discovery responses that Defendant has provided to Plaintiff, as illustrated in Defendant's timely response to Plaintiff's interrogatories, a copy of which is appended hereto as Exhibit C.

Moreover, it is untrue that the delay has resulted from the parties' failure to reach an agreement on a suitable protective order.  On April 8, 2008, Defendant proffered to Plaintiff a suitable protective order, signed by Defendant, adopted from the Federal Judicial Center's Manual for Complex Litigation, Fourth, § 40.27, at www.fjc.gov/public/home.nsf/autoframe?openform&url_r=pages/524.  *See* correspondence dated April 8, 2008, appended hereto as Exhibit D.

In reality, the ensuing delay resulted from Plaintiff's dilatory tactics.  Not until May 27, 2008, seven weeks later, did Plaintiff's counsel send a letter to Defendant, rejecting Defendant's proffered protective order on the grounds that it failed to include two tiers, and proffering to Defendant a two-tier agreement.  *See* correspondence dated May 27, 2008, appended hereto as Exhibit E.  Plaintiff's objection to Defendant's proffered protective order was frivolous and untimely.  Where the parties as well as their representatives are all attorneys, the two-tier protective order makes no sense. Moreover, two-tier agreements such as the one proposed by Plaintiff have been disapproved on the grounds that they result in excessively broad claims of confidentiality.  *See* Report of the New York City Bar Association on State Courts of Superior Jurisdiction, appended hereto as Exhibit F.

Nonetheless, Defendant executed Plaintiff's proffered order as an accommodation to Plaintiff and to expedite discovery, as per the correspondence from Defendant's counsel dated July 2, 2008, appended hereto as Exhibit G.

(3)    Plaintiff's objections to Defendant's request for evidence showing the extent to which Plaintiff has used its service mark in commerce are frivolous.  If Defendant were required to ferret information out of Plaintiff in order to defend this claim, a motion to compel would have followed.  However, Plaintiff has the burden of proof in this case, not Defendant.  *Federation Internationale de Football Ass'n v. Nike, Inc.,* 285 F. Supp. 2d 64, 72 (D.D.C. 2003).  By reason of its frivolous objections and contumacious responses to Defendant's discovery responses, Plaintiff has rejected a *bona fide* opportunity to introduce a genuine issue of material fact regarding the strength of its mark.  Defendant has accordingly informed Plaintiff that Defendant intends to file a motion for summary judgment, and was preparing to do so upon the close of discovery on September 1, 2008.  Plaintiff has no right to drag this case on another 90 days, and is hereby on notice that Defendant will file its motion for summary judgment as soon as practicable with or without a 90-day extension of the trial calendar.

(4)    It is untrue that the parties are attempting to negotiate a resolution of this issue.  Plaintiff has simply refused to answer Defendant's discovery requests, including a Notice of Deposition scheduled for July 29, 2008 (copy appended hereto as Exhibit H) at which Plaintiff unilaterally failed to appear, stating that it would not submit to a deposition until a satisfactory resolution had been issued.  Moreover, Plaintiff's representations are a façade because Plaintiff has signaled that it has no

intent to disclose relevant information *with or without* a protective order. *See* Plaintiff's correspondence dated May 27, 2008, Exhibit E hereto, stating, "[W]e cannot envision a Protective Order that could adequately protect the parties' commercially sensitive information in the unique circumstances of this case."

(5)    It is untrue that the parties have agreed to defer depositions of Plaintiff until this dispute has been resolved. Plaintiff simply informed Defendant that Plaintiff would not appear at the scheduled deposition or otherwise participate in discovery until the "dispute" was resolved. However, the "dispute" is a contrivance. Defendant has requested Plaintiff to disclose evidence on which Plaintiff will rely to demonstrate the strength of its service mark, and Plaintiff has refused to do so. In doing so, Plaintiff has forfeited an opportunity to raise a genuine issue of material fact in response to Defendant's prospective motion for summary judgment.

(6)    It is untrue that the parties are negotiating regarding disclosure of Plaintiff's financial information. As stated above, Defendant proffered an executed protective order on April 8, 2008 and, seven weeks later, on May 27, 2008, Plaintiff rejected that protective order on frivolous grounds and proffered an alternative order. Defendant signed that order. Plaintiff nevertheless refuses to make the requisite disclosures.

(7)    It is correct that this is the second request for an extension. However, this time the request is unjustified.

(8)    Counsel did in fact speak on July 29, 2008, and undersigned counsel did in fact inform Plaintiff's counsel that he was unable to reach his client. However, it was unreasonable for Plaintiff's counsel to expect such instructions to be

forthcoming when Plaintiff waited to request an extension until one day before the

June 30 deadline for filing expert reports.  Moreover, undersigned counsel also

informed Plaintiff's counsel that Defendant was opposed to an extension for the

reasons stated above.  It was therefore misleading for Plaintiff's counsel to suggest

that undersigned counsel's inability to reach his client was the exclusive reason why

the undersigned is unable to consent to the extension.

   In addition to the reasons stated above, Defendant opposes Plaintiff's request

for an extension of the calendar on the grounds that such extension would prejudice

the Defendant, who labored to prepare and serve its expert witness report on Plaintiff

before the expiration of the deadline on July 30, 2008.  A copy of that report (minus

exhibit), which was timely served, is appended hereto as Exhibit I.  Granting

Plaintiff's requested extension of the trial calendar would unfairly provide Plaintiff

with 90 additional days to prepare and serve its own expert witness report(s) at the

expense of Defendant, who was diligent in meeting the applicable deadline.

Therefore, if the Court grants Plaintiff's request, Defendant requests the Court to limit

such extension to prospective dates, and not to reopen the period for Plaintiff to

prepare and file any expert witness reports.

   Respectfully submitted,

**AMERICAN BAR ASSOCIATION**

By: _____
   Bruce A. McDonald, D.C. Bar No. 293753
   **SCHNADER HARRISON SEGAL & LEWIS LLP**
   2001 Pennsylvania Ave., N.S., Suite 300
   Washington, D.C. 20008
   (202) 419-4235

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 31, 2008, a copy of the foregoing

Defendant's Opposition to Motion for 90-Day Extension of Trial Calendar was served by

UPS, next day delivery, on the following counsel of record for Defendant:

        Matthew C. Wagner, Esq.
        COLLEN IP
        The Holyoke-Manhattan Building
        80 South Highland Avenue
        Town of Ossining
        Westchester County, NY 10562

        _____
        Bruce A. McDonald
        Attorney
        SCHNADER HARRISON SEGAL & LEWIS LLP

# Exhibit A

**McDonald, Bruce A.**

| | |
|---|---|
| **From:** | McDonald, Bruce A. |
| **Sent:** | Thursday, April 10, 2008 7:04 AM |
| **To:** | 'mwagner@collenip.com' |
| **Subject:** | Collen IP v. American Bar Association |

*FOR SETTLEMENT PURPOSES ONLY*

Hi Matt,

I appreciated the opportunity to speak with you yesterday.  As promised, I am attaching a copy of our March 7 mediation statement which I have been authorized to share with you in the interest of explaining the Defendant's position and letting you know why Defendant has rejected Plaintiff's settlement offer.  This will also confirm my statement to you yesterday in regard to footnote 34 on page 13, namely, that Defendant is not interested in pursuing a claim for sanctions.  However, I am not authorized to <u>waive</u> any such claim at this time, and of course Defendant's position is subject to change as the litigation progresses.

At the mediation conference on March 13, Defendant proposed a settlement that would have committed Defendant to continue using its "Globe" logo as a composite mark.  Plaintiff has now rejected that proposal.  Accordingly, my authority to offer that proposal has been withdrawn.

At this time, Defendant's settlement position is as follows: Defendant will waive its claim for attorney fees and sanctions if Plaintiff will dismiss its action with prejudice.  The rationale for this position is as follows:

(1)  The parties' marks are not confusingly similar.

(2)  Although Defendant always uses its "Globe" logo as part of a composite mark, the exact manner of such usage varies.  See, for example, the cover of the ABA's quarterly publication, "The International Lawyer" (copy attached).  In that usage, the "Globe" logo is dominated by the title of the publication, which itself is a "famous mark" in the relevant trade that designates the ABA Section of International Law as the source of the publication.

(3)  As a professional association consisting of attorneys including Plaintiff's members, Defendant regrets the difficulty that Plaintiff has brought upon itself by the investment of its reputation in this lawsuit.  Defendant is therefore willing to explore the possibility of an exit strategy that allows Plaintiff to save face.  For example, it is possible that I could advocate a settlement based on a dismissal of the action <u>without</u> prejudice.  However, to appreciate the obstacles that I would face in advocating such a settlement, Plaintiff must understand that the leaders of the ABA Section of International Law are also professionally invested an outcome that confirms the legitimacy of their actions.  Therefore, they do not believe that a proposal involving complex and cumbersome restrictions on the manner of usage is acceptable or justified.

In our discussion yesterday, I indicated that Defendant intends to file a motion for summary judgment, and I understood you to you agree that there may be no genuine issues of material fact, meaning that the case may be appropriate for cross-motions.  If that is true, then we should discuss the possibility of stipulating to the undisputed material facts.  Defendant's template for such a statement is set forth in Defendant's First Set of Requests for Admission of Fact and Genuineness of Documents.  Please let me have your views on this topic and, in the meantime, feel free to call me for any reason.

Bruce

**Mediation Statement Dated 3/7/2008**

**Exhibits to Mediation Statement**

| Ex. | Description |
|---|---|
| | ABA Section of International Law and Practice Strategic Communication Plan [Doc. No. 304] |

Chronology of Administration Committee meetings in the ABA Section of International Law leading to adoption of Defendant's mark [Doc. No. 305]

Sample of models and prototypes taken into consideration in selection and adoption of Defendant's mark [Doc. No. 298-299]

Memorandum dated March 8, 2004, from Section Chair Joshua Markus to ABA Secretary Ellen Rosenblum [Doc. No. 306-307]

Report dated March 31, 2005, from Deborah Enix-Ross to the Administration Committee of the ABA Section of International Law [Doc. No. 291-296]

Statement from Don Schaff and Friends, Inc., of Washington, D.C. in the amount of $3,420.00, for graphic design services [Doc. No. 308-309]

Plaintiff's U.S. Service Mark Registration No. 2,495,570, registered October 9, 2001

Plaintiff's letter dated September 19, 2005

Letter dated June 7, 2007, from Catherine Daubard to Plaintiff

Print-out, www.collenlaw.com

U.S. Service Mark Application Serial No. 75/854,018, specimens filed by Plaintiff November 19, 1999

*Id.,* Specimens filed by Plaintiff on January 7, 2007

"Inadmissible," Washington Legal Times, March 3, 2007

**The International Lawyer**

# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-1861 (ESH) |
| AMERICAN BAR ASSOCIATION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S**
**FIRST SET OF INTERROGATORIES**

Plaintiff , COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C. ("COLLEN

IP" or "Plaintiff"), hereby serves its Objections and Responses to Defendant's First Set of

Interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure.

**GENERAL OBJECTIONS**

1.    Plaintiff objects to each and every interrogatory to the extent it calls for

information not yet available, as these responses are made during the discovery

process.  Plaintiff is responding on the basis of its current knowledge and

information. Plaintiff reserves the right to supplement responses as and when

additional information becomes available.

2.    Plaintiff objects to each and every interrogatory insofar as and to the extent that it

seeks information protected by the attorney-client privilege, the work product

doctrine, or any other applicable privilege or immunity, and will not produce such

information. Any inadvertent disclosure of such information shall not be a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

3.  Plaintiffs object to each and every interrogatory insofar as and to the extent it seeks divulgence of trade secrets, confidential or proprietary information; such information will not be disclosed without an appropriate protective order in place.

4.  Plaintiff objects to each and every interrogatory to the extent it seeks production of information relating to or revealing proprietary development and marketing activities for Plaintiff's services not yet offered or otherwise employed. The slight relevance, if any, of such highly confidential trade secret information is vastly outweighed by the severe prejudice that would result to Plaintiff were it to be disclosed or available to competitors of Plaintiff. Plaintiff will not provide such information.

5.  Plaintiff objects to each and every interrogatory to the extent it calls for information neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence.

6.  Plaintiff objects to Defendant's definitions in their entirety to the extent same seek to impose obligations on Defendant beyond those permitted by the Federal Rules of Civil Procedure or the Local Rules applicable to this matter.

7.  Plaintiff objects to each and every interrogatory to the extent it calls for information that exceeds a reasonable durational scope.

8.    Plaintiff objects to each and every interrogatory to the extent it is overly broad, vague and ambiguous, unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence.

9.    Plaintiff objects to each and every interrogatory to the extent that it is duplicative.

10.   Plaintiff objects to the term "C Logo" in Paragraph 7 of Defendant's Definition Section, and its use of the term throughout Defendant's Interrogatories, Requests for Production of Documents and Request for Admissions, insofar as it may be qualified by the vague and ambiguous phrase "as designated in the introductory paragraph in Plaintiff's Complaint." Plaintiff's responses shall be limited to the mark that is the subject of this litigation, U.S. Reg. No. 2,495,570, as shown in the Principal Register, and will be referred to as "Plaintiff's Mark" or "Plaintiff's C Mark."

11.   Plaintiff objects to the term "Plaintiff's composite mark" defined in Paragraph 8 of Defendant's Definitions, and its use of the term throughout Defendant's Interrogatories, Requests for Production of Documents and Request for Admissions. Plaintiff's Mark is not a composite mark, nor does the use of Plaintiff's Mark with other words or marks render any of these combinations a composite mark. Plaintiff therefore will not respond to any discovery request concerning "Plaintiff's composite mark."

12.   Plaintiff objects to the term "Defendant's composite mark" defined in Paragraph 10 of Defendant's Definitions, and its use of the term throughout Defendant's Interrogatories, Requests for Production of Documents and Request for Admissions. Defendant's definition would mean that any of the seven possible

combinations of the Globe Logo with the words "ABA Section of International Law" and/or "Section of International Law" and/or "Your Gateway to International Practice" constitute Defendant's composite mark. The definition is thus overly broad and vague, and would render each Interrogatory concerning "Defendant's composite mark" seven Interrogatories. Moreover, Defendant's definition and use of the term constitutes an incorrect use of the term "composite mark" as a matter of law. The use of Defendant's Globe Logo with a variety of other words does not render any and all of these possible combinations a single composite mark. Plaintiff will accordingly limit its responses to Defendant's Globe Logo and will not respond to discovery requests as to any purported "composite mark" of Defendant's.

13.    Plaintiff objects to each and every interrogatory to the extent that it contains an additional question asking Plaintiff to "identify all documents, records and things" that are "necessary or appropriate to substantiate" or "illustrate" or "relate to" Plaintiff's answer to such interrogatory. This is an improper and burdensome use of the interrogatory procedure, in that it unnecessarily duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

## SPECIFIC OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 1

State the annual volume of revenues associated with Plaintiff's use of its "C" Logo and its composite mark, respectively, for the past five years, and identify all

documents, records and things that are necessary or appropriate to substantiate those figures.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.  Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff as set forth above in Paragraph 11, and to the term "Plaintiff's C Logo" as set forth in Paragraph 10. Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things" that are "necessary or appropriate to substantiate" Plaintiff's answer.  This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.  Plaintiff further objects to this interrogatory on the ground that it seeks divulgence of confidential, commercially sensitive and proprietary information; such information will not be disclosed without an appropriate protective order in place.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information.  Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years.  The information and documents requested include such privileged information.  Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Plaintiff objects generally to the disclosure of its financial information as being so sensitive that even disclosing it to Defendant's attorney would be unreasonable, as both Defendant and Defendant's attorney are Plaintiff's competitors.  Plaintiff will not disclose such information.

## INTERROGATORY NO. 2

State the annual volume of expenditures associated with the advertising and promotion of Plaintiff's "C" Logo and its composite mark, respectively, for the past five years, and identify all documents, records and things that are necessary or appropriate to substantiate those figures.

## Answer:

Plaintiff hereby incorporates by reference all of its General Objections.  Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff as set forth above in Paragraph 11, and to the term "Plaintiff's C Logo" as set forth in Paragraph 10. Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things" that are "necessary or appropriate to substantiate" Plaintiff's answer.  This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.  Plaintiff further objects to this interrogatory on the ground that it seeks divulgence of confidential, commercially sensitive and proprietary information; such information will not be disclosed without an appropriate protective order in place.

Plaintiff objects generally to the disclosure of its financial information as being so sensitive that even disclosing it to Defendant's attorney would be unreasonable, as both Defendant and Defendant's attorney are Plaintiff's competitors. Plaintiff will not disclose such information.

**INTERROGATORY NO. 3**

If Plaintiff contends that it has used its "C" Logo other than as part of its composite mark at any time during the past five years, identify all documents, records and things that are necessary or appropriate to fully and accurately illustrate the nature and extent of such usage.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11. Plaintiff's Mark is not a composite mark or a part of a composite mark. Plaintiff further objects to the term "Plaintiff's C Logo," as set forth in Paragraph 10.

Plaintiff further objects to this interrogatory as indefinite, vague, overly broad, burdensome and irrelevant. The phrase "all documents, records and things that are necessary or appropriate to fully and accurately illustrate" is unduly broad, vague and burdensome. This request could potentially require disclosure of every detail of Plaintiff's business whether relevant or not, and improperly calls for many more documents than would be necessary to provide a sufficient response.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things" that are "necessary or appropriate to fully and accurately illustrate" Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, documents, records and things illustrative of Plaintiff's use of its Mark over the last five years will be available for inspection at the offices of Collen IP, The Holyoke-Manhattan Building, 80 South Highland Avenue, Ossining, New York, 10562 at a mutually agreeable date and time.

## INTERROGATORY NO. 4

If Plaintiff contends that Defendant has used its "Globe" Logo other than as part of Defendant's composite mark, state the factual basis for that contention and identify all documents, records and things that illustrate, reflect, relate or refer to such usage.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff objects to the term "Defendant's composite mark," as set forth above in Paragraph 12. Defendant's understanding of the term "composite mark" is incorrect, making the Interrogatory ambiguous, vague and confusing, and Plaintiff is therefore unable to answer it. Plaintiff further objects that this request is unduly burdensome as the facts relating to Defendant's use of its mark is better known to Defendant than to Plaintiff, and documents pertaining thereto are within Defendant's custody and control, and are therefore readily available to Defendant.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Subject to and without waiving the foregoing objections, samples from the Internet of Defendant's use of its Globe Logo will be available at the offices of Collen IP, The Holyoke-Manhattan Building, 80 South Highland Avenue, Ossining, New York, 10562 at a mutually agreeable date and time.

Plaintiff notes that its investigation is continuing. Plaintiff reserves the right to supplement as and when additional facts and responsive documents are discovered. Plaintiff also refers Defendant to all such uses of the Globe logo on Defendant's website, its publications and documents.

INTERROGATORY NO. 5

If Plaintiff contends that relevant purchasers recognize Plaintiff's "C" Logo as an indication of source and origin apart and aside from its appearance in Plaintiff's composite mark, state the factual basis for that contention and identify all documents, records and things that illustrate, reflect, relate or refer to such recognition.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff also objects to the extent this interrogatory calls for a legal conclusion. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11. Plaintiff's Mark is not a composite mark or a part of a composite mark. Plaintiff further objects to the term "Plaintiff's C Logo," as set forth in Paragraph 10.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice

of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Plaintiff responds that relevant purchasers recognize Plaintiff's "C" Mark as an indication of source and origin. Plaintiff has been using its C Mark in connection with the provision of legal services for 9 years. Every letter, invoice, newsletter and other paper emanating from Plaintiff, its website, and all of its promotional materials, bear the C Mark. Further, the Mark is highly recognizable: it is artistic, creative and very distinctive.

Subject to and without waiving the foregoing objections, Plaintiff refers Defendant to all of the documents and things produced or to be produced by Plaintiff in this litigation.

**INTERROGATORY NO. 6**

If Plaintiff contends that relevant purchasers recognize the color of Plaintiff's "C" Logo and/or the color of Plaintiff's composite mark as an indication of source and origin, state the factual basis for that contention and identify all documents, records and things that illustrate, reflect, relate or refer to such recognition.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff objects to the extent this interrogatory calls for a legal conclusion. Plaintiff objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11.

Plaintiff's Mark is not a composite mark or a part of a composite mark. Plaintiff further objects to the term "Plaintiff's C Logo," as set forth in Paragraph 10.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Plaintiff responds that Plaintiff has been using its C Mark, with coloration, in connection with the provision of legal services for 9 years. Every letter, invoice, and newsletter emanating from Plaintiff, Plaintiff's website, and all of Plaintiff's promotional materials, bear the C Mark. Further, the Mark, including its coloration, is highly recognizable: it is artistic, creative and very distinctive.

Subject to and without waiving the foregoing objections, Plaintiff refers

Defendant to all of the documents and things produced or to be produced by Plaintiff in this litigation.

## INTERROGATORY NO. 7

If Plaintiff contends that its "C" Logo has acquired distinctiveness or secondary meaning apart from the composite mark in which it appears, state the factual basis for that contention and identify all documents, records and things that illustrate, represent, reflect, relate or refer to such acquired distinctiveness or secondary meaning.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11 above. Plaintiff's Mark is not a composite mark or a part of a composite mark. Plaintiff further objects to the term "Plaintiff's C Logo," as set forth in Paragraph 10 above.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, represent, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory on the ground that it is irrelevant, obscure, vague and improper. Plaintiff's Mark is arbitrary and fanciful, is inherently distinctive and has no meaning other than as an indication of source and origin. The

existence of acquired distinctiveness or secondary meaning is therefore irrelevant.

Plaintiff further objects on the ground that this interrogatory calls for a legal conclusion.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

## INTERROGATORY NO. 8

If Plaintiff contends that the color of its "C" Logo and/or the color of its composite mark has acquired distinctiveness or secondary meaning, state the factual basis for that contention and identify all documents, records and things that illustrate, represent, reflect, relate or refer to such acquired distinctiveness or secondary meaning.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects on relevancy grounds, and on the ground that this request calls for a legal conclusion. See Plaintiff's response to Interrogatory No. 7, above, incorporated herein by reference.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question

asking Plaintiff to "identify all documents, records and things that illustrate, represent, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

## INTERROGATORY NO. 9

If Plaintiff contends that its composite mark is dominated by the "C" Logo, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

### Answer:

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff also objects on the ground that this interrogatory calls for a legal conclusion. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11. Plaintiff objects to the use of the word "dominated" as vague and ambiguous. Plaintiff's Mark is not a composite mark or a part of a composite mark.

Plaintiff's Mark *is* the so-called "C" Logo. The interrogatory is therefore meaningless, and Plaintiff is accordingly unable to respond to it.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

## INTERROGATORY NO. 10

If Plaintiff contends that Defendant's composite mark is dominated by the "Globe" Logo, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff

also objects on the ground that this interrogatory calls for a legal conclusion. Plaintiff objects to the term "Defendant's composite mark," as set forth above in Paragraph 12. Defendant's understanding of the term "composite mark" is incorrect; Defendant's mark is the "Globe" Logo. It is not a composite mark or a part of a composite mark. Plaintiff further objects to the use of the word "dominated" as vague and ambiguous. Defendant's interrogatory is therefore meaningless and Plaintiff is unable to answer it.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.


**INTERROGATORY NO. 11**

If Plaintiff contends that its composite mark is a "strong" mark within the meaning of *Federation Internationale de Football Ass'n v. Nike, Inc.,* 285 F. Supp. 2d 64, 72 (D.D.C. 2003)(*"Nike"*), state the factual basis of that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11. Plaintiff's Mark is not a composite mark or a part of a composite

mark. Plaintiff is accordingly unable to respond to this interrogatory.

Plaintiff further objects to the phrase "a 'strong' mark within the meaning of
*Federation Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 72 (D.D.C.
2003)) (*"Nike"*)," on the ground that it calls for a conclusion of law. Responding to this
interrogatory would require Plaintiff to read and analyze a case, and then determine the
legal application of its holding, if any, to the facts of this case.

Plaintiff further objects on the ground that this interrogatory is an improper and
burdensome use of the interrogatory procedure in that it contains an additional question
asking Plaintiff to "identify all documents, records and things that illustrate, support,
reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly
duplicates, compounds and confuses the process of responding to both Defendant's
Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks
information protected by the attorney-client privilege, the work product doctrine, or any
other applicable privilege or immunity, and will not produce such information. Plaintiff is a
law firm, and it has used the "C" Mark on virtually all of its communications in its practice
of law and in communications with clients for the past nine years. The information and
documents requested include such privileged information. Any inadvertent disclosure of
such information shall not be considered a waiver of the attorney-client privilege, the work
product doctrine, or any other applicable privilege or immunity.

## INTERROGATORY NO. 12

If Plaintiff contends that its "C" Logo is a "strong" mark within the meaning of

the *Nike* case, apart and aside from its appearance in Plaintiff's composite mark, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects to the term "its composite mark" in reference to Plaintiff, as set forth above in Paragraph 11. Plaintiff accordingly objects to the phrase "apart and aside from its appearance in Plaintiff's composite mark." Plaintiff's Mark is not a composite mark or a part of a composite mark. Plaintiff further objects to the term "Plaintiff's 'C' Logo," as set forth in Paragraph 10 above, incorporated herein by reference.

Plaintiff further objects to the phrase "a 'strong' mark under the *Nike* case" on the ground that it calls for a legal conclusion. Please see Plaintiff's response to Interrogatory 11, incorporated herein by reference.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice

of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

## INTERROGATORY NO. 13

If Plaintiff contends that the services of the parties are similar or competitive, or that there is a proximity between the parties' services that results in a likelihood of confusion between the parties' marks as actually used, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

### Answer:

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff also objects to this Interrogatory on the ground that it calls for a legal conclusion. Plaintiff specifically objects to this Interrogatory on the ground that it is compound, in that it incorporates virtually all of the elements of a trademark infringement cause of action. In essence, Defendant asks Plaintiff to identify "all documents, records and things that illustrate, support, reflect, relate or refer to" Plaintiff's claim against Defendant for trademark infringement. This is not a proper interrogatory, as it seeks to avoid the limitation on the number of interrogatories permitted by the Federal Rules of Civil Procedure, and would impose an enormously burdensome discovery obligation upon Plaintiff.

Plaintiff further objects to this interrogatory as indefinite, vague, irrelevant and

oppressive, as this request could potentially require disclosure of every detail of Plaintiff's business whether relevant or not. Further, this request seeks proprietary business information not relevant to these proceedings and not reasonably tailored to lead to the discovery of admissible evidence.

Plaintiff further objects to this interrogatory insofar as and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and will not produce such information. Plaintiff is a law firm, and it has used the "C" Mark on virtually all of its communications in its practice of law and in communications with clients for the past nine years. The information and documents requested include such privileged information. Any inadvertent disclosure of such information shall not be considered a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further notes that discovery is continuing. Plaintiff reserves the right to supplement as and when additional facts and responsive documents are discovered.

Subject to and without waiving the foregoing objections, Plaintiff responds that Defendant and Plaintiff both provide consultative legal services and legal education in the field of Intellectual Property in the context of international law and business. Indeed, one

of Defendant's subcommittees bears the name "International Intellectual Property Committee," and prominently displays the Globe logo on its web page.

Plaintiff further notes that Defendant's International Intellectual Property Rights Advisory Program directly competes with Plaintiff in offering to provide attorneys to small and medium-sized U.S. businesses to assist in protecting their intellectual property overseas, a service that Plaintiff provides to its clients. Further, as Plaintiff's attorneys are members of Defendant's International Law Section and are among those who may register to participate in this program, customers who employ Plaintiff through this program will be exposed to both Plaintiff's and Defendant's marks in the course of the referral, greatly increasing the likelihood of confusion as to the source of the legal services.

Subject to and without waiving the foregoing objections, documents from the Internet relating to Defendant's International IPR Advisory Program and Intellectual Property Committee and Defendant's related publications will be available for inspection at the offices of Collen IP, The Holyoke-Manhattan Building, 80 South Highland Avenue, Ossining, New York, 10562 at a mutually agreeable date and time.

**INTERROGATORY NO. 14**

If Plaintiff contends that either or both parties are likely to "bridge the gap" between their respective services, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Specifically, Plaintiff objects to this interrogatory on the ground that the term "bridge the gap" is indefinite and vague. To the extent that the term "bridge the gap" is a legal term of art, Plaintiff objects on the ground that this interrogatory calls for a legal conclusion.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Subject to and without waiving the foregoing objections, Plaintiff responds that Defendant is already providing services identical to those offered by Plaintiffs, as among other things, by virtue of its program "International Intellectual Property Rights Advisory Program," which provides small and medium-sized U.S. enterprises with U.S. attorneys to help them protect their intellectual property in foreign countries.

Subject to and without waiving the foregoing objections, documents from the Internet relating to Defendant's International IPR Advisory Program will be available for inspection at the offices of Collen IP, The Holyoke-Manhattan Building, 80 South Highland Avenue, Ossining, New York, 10562 at a mutually agreeable date and time.

Plaintiff further notes that discovery is continuing. Plaintiff reserves the right to supplement as and when additional facts and responsive documents are discovered. Reference is made to Plaintiff's response to Interrogatory 13, incorporated herein by

reference.

## INTERROGATORY NO. 15

State whether Plaintiff is aware of any instance in which any person has been confused, mistaken or deceived as a result of the alleged similarity between the parties' marks, and if the answer to that question is affirmative, identify each such person, describe in detail the facts and circumstances involved in each such instance, and identify all documents, records and things that illustrate, reflect, relate or refer to such instance.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

Subject to and without waiving any of the foregoing objections, Plaintiff responds that it is not presently aware of any instances of actual confusion, mistake or deceit at this time. Plaintiff alleges a likelihood of confusion between the parties' marks. Plaintiff notes that discovery is continuing. Plaintiff reserves the right to supplement as and when additional information and/or documents become available.

## INTERROGATORY NO. 16

If Plaintiff contends that Defendant selected, adopted or used its "Globe" Logo or its composite mark in bad faith, or that it has willfully infringed Plaintiff's trademark rights, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Subject to and without waiving the foregoing objections, Plaintiff responds on information and belief that Defendant was aware of the existence of Plaintiff, the nature of Plaintiff's services and clients, and of Plaintiff's Mark prior to Defendant's adoption of the Globe Mark, and was aware of the confusion that was likely to occur if Defendant adopted and used the Globe Mark. Plaintiff further responds that Defendant was explicitly notified of Plaintiff's claim of trademark infringement in Plaintiff's letters dated September 19, 2005, March 27, 2006 and December 12, 2006. Copies of these letters will be available for inspection at the offices of Collen IP, The Holyoke-Manhattan Building, 80 South Highland Avenue, Ossining, New York, 10562 at a mutually agreeable date and time. Notwithstanding such explicit notification of Plaintiff's prior rights, Defendant has continued unabated in its use of the Globe Mark.

Plaintiff notes that discovery is continuing. Plaintiff has not had the opportunity of reviewing discovery from Defendant, including any searches or internal communications relative to its selection and adoption of its mark. Plaintiff will supplement as and when additional responsive information and documents are available.

**INTERROGATORY NO. 17**

State the factual basis for the assertion in Paragraphs 2 and 4 of Plaintiff's

Complaint that Plaintiff is entitled to damages, and identify all documents, records and

things that illustrate, support, reflect, relate or refer to such assertion.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff

objects to this request to the extent it seeks disclosure of documents and information

subject to the attorney-client and work product privileges. Plaintiff objects to this

interrogatory as indefinite, vague, and irrelevant.

Plaintiff further objects on the ground that this interrogatory is an improper and

burdensome use of the interrogatory procedure in that it contains an additional question

asking Plaintiff to "identify all documents, records and things that illustrate, support,

reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly

duplicates, compounds and confuses the process of responding to both Defendant's

Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory on the ground that it calls for a

conclusion of law. A party's right to damages in a trademark dispute is a question of law

governed by the Lanham Act, as well as common law.

Notwithstanding the foregoing, Plaintiff does not allege entitlement to damages in

Paragraphs 2 and 4 of its Complaint. Plaintiff does seek damages in the remedies portion

of its complaint.

**INTERROGATORY NO. 18**

State the factual basis for the demand in Paragraph 4 of Plaintiff's Complaint that "the conduct of Defendant complained of herein be declared willful and as a result the amounts of actual damages be trebled as provided for in 16 U.S.C. § 1117," and identify all documents, records and things that illustrate, support, reflect, relate or refer to such demand.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff objects to this request to the extent it seeks disclosure of documents and information subject to the attorney-client and work product privileges.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects to this interrogatory on the ground that it calls for a legal conclusion. A party's right to damages in a trademark dispute is a question of law governed by the Lanham Act, as well as common law. The quotation from Plaintiff's Complaint is not an allegation; it is request for relief from the Court.

Please also see Plaintiff's response to Interrogatory 16, incorporated herein by reference.

Plaintiff notes that discovery is continuing. Plaintiff will supplement as and when additional responsive information and documents become available.

## INTERROGATORY NO. 19

If Plaintiff contends that there are any facts or circumstances relating to the quality of either party's services that may result in a likelihood of confusion, mistake or deception, state the factual basis for that contention and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

## Answer:

Plaintiff hereby incorporates by reference all of its General Objections. Plaintiff specifically objects to this interrogatory on the ground that the phrase "the quality of either party's services" is vague, ambiguous, indefinite and unclear.   Plaintiff is accordingly unable to respond to this interrogatory.  To the extent that this interrogatory calls for a legal conclusion, Plaintiff further objects.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer.  This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

## INTERROGATORY NO. 20

If Plaintiff contends that there are any facts or circumstances relating to the sophistication of purchasers in either of the parties' markets that may result in a likelihood of confusion, mistake or deception, state the factual basis for that contention

and identify all documents, records and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

Plaintiff further objects on the ground that this interrogatory is an improper and burdensome use of the interrogatory procedure in that it contains an additional question asking Plaintiff to "identify all documents, records and things that illustrate, support, reflect, relate or refer" to Plaintiff's answer. This unnecessarily and improperly duplicates, compounds and confuses the process of responding to both Defendant's Interrogatories and its Request for Production of Documents and Things.

Plaintiff further objects on the ground that the interrogatory is vague, confusing and burdensome. The phrase "facts or circumstances relating to the sophistication of purchasers in either of the parties' markets that may result in a likelihood of confusion" is meaningless. The term "the parties' markets" is vague and undefined; the term "sophistication of purchasers" is a legal term of art.

**INTERROGATORY NO. 21**

If Plaintiff contends that there is anything about the price of either party's services that may result in a likelihood of confusion, mistake or deception, state the factual basis for that contention and identify all documents, records, and things that illustrate, support, reflect, relate or refer to such contention.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

No further response to this interrogatory is required, as Defendant has exceeded the limit on the number of interrogatories permitted by F.R.C. P. 33(a)(1).

**INTERROGATORY NO. 22**

Has Plaintiff, or any partner or associate in Plaintiff's firm, ever been a party or a witness in a civil or administrative proceeding involving one or more allegations of (a) trademark, service mark or trade name infringement, or (b) fraud, deception or unfair trade practices? If so, identify each such proceeding, including the style of the case, the name of the parties, the court or agency involved, the docket number of the proceeding, the date of the outcome, a summary of the material allegations, and a description of the outcome.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

No further response to this interrogatory is required, as Defendant has exceeded the limit on the number of interrogatories permitted by F.R.C. P. 33(a)(1).

**INTERROGATORY NO. 23**

Identify all persons with whom Plaintiff has communicated regarding the possibility of providing expert or other testimony in this case, and identify all documents, records and things communicated or exchanged between Plaintiff and such person.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

This interrogatory is premature, as the time for expert disclosure has not yet

accrued.  Plaintiff will abide by the Court schedule for expert disclosure and will do so

pursuant to the Court's order and the Federal Rules of Civil Procedure.  Furthermore,

communications or consultation with experts is privileged and immune from discovery

unless and until disclosure of such experts as intended for use at trial has been made

under the rules.

No further response to this interrogatory is required, as Defendant has exceeded

the limit on the number of interrogatories permitted by F.R.C. P. 33(a)(1).


**INTERROGATORY NO. 24**

Identify those persons who prepared any answer or portion of any such answer to

these Interrogatories or who participated in such preparation by gathering the

information, documents or otherwise, and specify which answer or portion thereof each

person provided or prepared.

**Answer:**

Plaintiff hereby incorporates by reference all of its General Objections.

Plaintiff further objects to this interrogatory because the response calls for

provision information which is privileged or otherwise immune from discovery.

No further response to this interrogatory is required, as Defendant has exceeded

the limit on the number of interrogatories permitted by F.R.C. P. 33(a)(1).


AS TO BOTH ANSWERS AND OBJECTIONS:

By: _____
Jess M. Collen
Matthew C. Wagner
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
Attorneys for Plaintiff

Date: May 27, 2008

## CERTIFICATE OF SERVICE

I, Patti A. Green, hereby certify I caused a true copy of the foregoing Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories to be served upon the following individuals, in the following manner, addressed in the following way on May 27, 2008:

> VIA First Class Mail
> Bruce A. McDonald
> 2001 Pennsylvania Avenue, NW, Suite 300
> Washington, DC 20006-1825

Patti A. Green

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COLLEN IP, INTELLECTUAL | ) | |
| PROPERTY LAW, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-1861 (ESH) |
| v. | ) | |
| | ) | |
| AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWERS AND OBJECTIONS**
**TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant, pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local

Rules of this Court, submits the following answers and objections to Plaintiff's First Set of

Interrogatories.

**Objections to Instructions and Definitions**

The following Definitions in Plaintiff's Interrogatories would impose an undue burden on

Defendant if construed literally or in a manner that required more of a response than what

appears below.

(1)    **"Defendant."**  Defendant objects to Plaintiff's definition of "Defendant" as

overly broad and unduly burdensome to the extent it includes the entire American Bar

Association, "including its divisions, departments, subsidiaries, parents, partners, joint venture

partners, officers, directors, owners, agents, employees, accountants, any predecessor or

successor in interest thereof, and all other persons acting on behalf of or for the benefit of the

American Bar Association."  The real party in interest in this case is the ABA Section of

International Law, one of 28 Sections and Divisions that comprise the ABA.  Without waiving

this objection, the following Interrogatory answers are offered on behalf of the entire ABA with

reference to its policies and procedures, including those relating to trademark usage and graphics standards involving the trademarks "American Bar Association" and "ABA" such as they relate to this case, with specific reference to the conduct and activity of the Section of International Law as it relates to this case.  Within that context, Defendant has interpreted "Defendant" broadly so as to provide the most meaningful responses.

(2)     **"Defendant's Design Mark."**  Defendant objects to Plaintiff's definition of "Defendant's Design Mark" on the grounds that Defendant's Globe Logo, referred to as "Defendant's Design Mark" in Plaintiff's Definitions, is not used by Defendant in isolation, but is instead used by Defendant in a collection of composite marks including the names "American Bar Association," "ABA," and "Section of International Law," and the slogans "Defending Liberty, Pursuing Justice," and "Your Gateway to International Practice."  Defendant objects to Plaintiff's definition of the Globe Logo as "Defendant's Design Mark" because it assumes a fact not in evidence, namely, that the Globe Logo is used by Defendant as a "Design Mark" apart from its appearance in composite marks including the names "American Bar Association," "ABA," "Section of International Law," and the slogans "Defending Liberty, Pursuing Justice," and "Your Gateway to International Practice."  Plaintiff's proposed definition of Defendant's "Design Mark" also introduces a misleading distinction between Plaintiff's Definition of its "C" Logo and that of Defendant's Globe Logo, considering that Plaintiff refers to its pleaded mark as the "C Logo," instead of a "Design Mark," notwithstanding that Plaintiff also uses its logo as part of a composite mark including the name "Collen."

## INTERROGATORY NO. 1

Identify the Defendant's Design Mark and describe each product or service offered by Defendant in the United States under Defendant's Design Mark, as offered by Defendant, in connection with the Section of International Law.

## ANSWER TO INTERROGATORY NO. 1

**(a)    Identification of Defendant's Design Mark**

The "Design Mark" of Defendant identified in Plaintiff's Definitions, referred to below as Defendant's "Globe Logo," consists of the following logo which forms the basis of the present controversy:



**(b)    Services Offered by Defendant**

Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence, to the extent it requires a description of the services offered by Sections and Divisions of the ABA other than those of the Section of International Law.  As grounds for this objection, Defendant states that the Globe Logo forming the basis of the present controversy is used only by the ABA in connection with the services of the Section of International Law.

Without waiving the above objection, Defendant states as follows.  Among other activities, the ABA provides law school accreditation, continuing legal education, information about the law, programs to assist lawyers and judges in their work, and initiatives to improve the legal system for the public.  The ABA has 22 practice sections focused on individual fields of law, including the Section of International Law, which is housed in the ABA's office in Washington, D.C.

3

**The Four "P's."**  Generally speaking, the principal services offered by the ABA Section of International Law are referred to as the "Four P's": Programs, Publications, Policies and Projects.  Detailed information about the activities comprised in these services is contained in the informational reports submitted over the past four years by the Section of International Law to the ABA House of Delegates, produced under serial numbers (hereinafter "Doc. Nos.") 132-145; 300-303; 438-442; 443-447; 448-456; 457-461; 462-467; 468-474; 475-478; 479-486; 487-492; and the 2006-2009 Strategic Plan (Doc. No. 493-500).

**Programs.**  As disclosed in the documents identified above, the ABA Section of International Law offers continuing legal education programs throughout the year, including but not limited to programs at the Section's seasonal and annual meetings.  The seasonal meetings are three-day events with more than 70 CLE programs addressing developments in areas of international law and practice.  The seasonal meetings are currently attended by between 1,000 and 1,500 attorneys and law students from around the world.  The ABA annual meetings, comprised of all 28 Sections and Divisions, are much larger.

The Section of International Law also offers a series of one and two-day conferences on various subjects relating to international law throughout the year.  Recent examples include "Transitional Justice: From Nuremberg to Africa" and "Class Action Litigation in Europe."  The Section also organizes live interactive videoconferences of briefings by officials at the Securities and Exchange Commission and other U.S. government agencies on topics relating to international law.

The principal programs offered by the Section of International Law take place at its seasonal meetings and the ABA annual meeting.  The Spring Meeting is held in New York City and Washington, D.C., in alternating years.  Defendant's use of the Globe Logo in connection

with the annual Spring Meeting is illustrated in the CD-ROMs and program brochures produced
as the following Exhibits:

- Program Brochure, 2008 Spring Meeting, New York, NY, Ex. 19

- Program Brochure, 2008 Spring Meeting, New York, NY, Ex. 22

- CD-ROM, 2007 Spring Meeting, Washington, D.C., Ex. 9

- Program Brochure, 2006 Spring Meeting, New York, NY, Ex. 24

- CD-ROM, 2006 Spring Meeting, Ex. 6

The Section's annual Fall Meeting, in turn, is typically held in a major U.S. or foreign
city such as Brussels (2005 and 2008), Miami (2006 and 2009), or London (2007).  Defendant's
use of the Globe Logo in connection with the annual Fall Meeting is illustrated in the CD-ROMs
and program brochures produced as the following Exhibits:

- Program Brochure, 2008 Fall Meeting, Brussels, Ex. 29

- Program Brochure, 2007 Fall Meeting, London, Ex. 23

- CD-ROM, 2007 Fall Meeting, London, Ex. 10

- Program Brochure, 2005 Fall Meeting, Brussels, Ex. 25

- CD-ROM, 2006 Fall Meeting, Miami, FL, Ex. 7

- CD-ROM, 2005 Fall Meeting, Brussels, Ex. 5

The ABA Section of International Law also participates in the ABA annual meetings, at
which it typically presents a number of CLE programs.  Defendant's use of the Globe Logo in
connection with an annual ABA meeting is illustrated in the CD-ROM for the 2007 Annual
Meeting produced as Exhibit 8.

In addition to programs offered by the ABA Section of International Law, the Section is
comprised of more than 60 substantive committees spanning all aspects of international and
transnational law, each of which engages in its own programs.  Defendant objects to this

Interrogatory on the grounds that it is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence, to the extent it requires an itemization of activities conducted by the 60+ committees that comprise the Section of International Law.

**Publications**.  The ABA Section of International Law publishes extensively on topics of international law, including its well known quarterly publication, *The International Lawyer,* the most widely read scholarly journal in international law.  *The International Lawyer* is sent to Section members and non-member subscribers.  A copy of the Fall 2007 issue of *The International Lawyer* is being produced as Exhibit 20.  The Section also publishes a quarterly newsletter, the *International Law News,* which reports on developments in international law.  Copies of recent editions of the *International Law News* are being produced as Doc. Nos. 146-172a (Fall 2003); 173-204 (Spring 2005); 205-228 (Summer 2005); 209-260 (Winter 2008); and 261-284 (Spring 2008).

The Section also publishes books of interest to its members, in particular the International Practitioners Deskbook Series (IPDS).  A recent example of the IPDS is Reitz (ed.), *Labor and Employment Law in the New EU Member and Candidate States* (2007), produced as Exhibit 18.  Examples of other recent publications include Swartz (ed.), *Careers in International Law* (3d ed. 2008), produced as Exhibit 16; the 2007-2008 Leadership Directory, produced as Exhibit 27; and the brochure entitled *Pathways to Employment in International Law*, produced as Exhibit 31.

In addition to materials published by the Section, the 60+ Section committees engage in their own publication activities.  These committees have active list serves and individual websites.  They produce practice-specific publications and electronic newsletters, and host programs at the Section's seasonal meetings and the ABA annual meeting.  They also organize stand-alone programs and teleconferences in specialized areas of interest to their members.

**Projects.**  The ABA Section of International Law engages in numerous projects, such as the organization of International Legal Exchange (ILEX) briefing trips to foreign countries.  The Section has organized ILEX briefing trips to more than 45 countries since 1982.  The Section also organizes an annual event at the United Nations called "ABA Day at the U.N." involving meetings between senior U.N. representatives and the President of the ABA, the Chair of the Section of International Law, the ABA Executive Director, the ABA Rule of Law Initiative Director, members of the ABA Board of Governors, ABA House of Delegates, and leaders of the Section Council.

Projects in which the ABA Section of International Law is currently involved include Special Task Forces on Financial Engineering for Economic Development; International Election Standards; Legal Education and Specialist Certification; Nuclear Non-proliferation; Rule of Law and Health; ILEX Africa; and the International Models Project on Women's Rights.

In the area of international intellectual property, the Section is working with the U.S. Department of Commerce and the Coalition Against Counterfeiting and Piracy on an International Intellectual Property Rights (IPR) Advisory Program that allows American small and medium size enterprises (SMEs) to receive a free, one-hour consultation with an experienced volunteer attorney regarding the protection of its IP rights in Brazil, Russia, India, China, Egypt, or Thailand.

**Policy.**  The ABA Section of International Law is a leader in the formulation of public policy positions on behalf of the American Bar Association regarding matters of international law.  A full list of ABA international policies can be found at www.abanet.org/intlaw/leadership/policy.html.  The Section also provides advice on nominations to international courts.  The Section has more than 40 liaisons to other international

legal organizations and collaborates with multiple international organizations, including a

partnership with the United Nations Development Programme called the International Legal

Resource Center based on a commitment to the promotion of good governance and rule of law.

(c)    **Products**

As a service organization, Defendant is not engaged in the manufacture or distribution of

products.  However, the Section of International Law does distribute various promotional items

as a means of advertising and promoting its services, some of which are available for purchase at

seasonal and annual meetings and other occasions.  These items are identified in response to

Interrogatory No. 13 below.

**INTERROGATORY NO. 2**

Identify all trademarks under which Defendant's products or services are offered to
members or sold to the general public in the United States, in connection with the Section of
International Law.

**ANSWER TO INTERROGATORY NO. 2**

The ABA Section of International Law uses the trademarks and service marks of its

parent organization, consisting of the name "American Bar Association;" the acronym "ABA;" a

stylized depiction of the acronym "ABA;" and the slogan "Defending Liberty, Pursuing Justice."

These marks are identified in the American Bar Association Graphic Standards Manual, a copy

of which is being produced as Doc. No. 33-69.

The Section of International Law uses its Globe Logo along with the above service

marks, in addition to its own name, "Section of International Law," and the slogan, "Your

Gateway to International Practice."  As stated above, the ABA consists of 28 Sections and

Divisions, including 21 sections in addition to the Section of International Law, each of which

uses the ABA service marks identified above as well as its own name.  Many or all of those other

27 Sections and Division use additional service marks.  Defendant objects to this Interrogatory

on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead

to the discovery of admissible evidence, to the extent it requires the identification of service

marks used by Sections and Divisions of the American Bar Association other than the Section of

International Law.

**INTERROGATORY NO. 3**

Identify the persons most knowledgeable about (a) the products or services offered by
Defendant identified in response to Interrogatory No.1; and (b) any products or services bearing
Defendant's Design Mark.

**ANSWER TO INTERROGATORY NO. 3**

The persons most knowledgeable about the services offered by the ABA Section of

International Law and the use of Defendant's Globe Logo in connection with those services are:

- Leanne Pfautz, Director, Section of International Law, American Bar
  Association, 740 15th St., N.W., Washington, D.C. 20005-0122;

- Jeffrey B. Golden, Esq., Chair, Section of International Law, American
  Bar Association, c/o Allen & Overy LLP, One Bishop Square, London, E1
  6AO, United Kingdom; and

- Aaron Schildhaus, Esq., Chair-Elect, Section of International Law,
  American Bar Association, c/o Law Offices of Aaron Schildhaus, 1101
  New Hampshire Ave., N.W., Suite 901, Washington, D.C. 20037-1508

Defendant objects to this Interrogatory to the extent that it requires the identification of telephone

numbers or e-mail addresses for these individuals, on the grounds that they are party witnesses

whom Plaintiff is prohibited from contacting directly, and that they will be made available for

deposition upon request.

**INTERROGATORY NO. 4**

With respect to the products and services sold by Defendant, in connection with the Section of International Law, describe in detail the channels of trade in which such products or services are marketed and offered.

**ANSWER TO INTERROGATORY NO. 4**

The services of the ABA Section of International Law are marketed principally by means of direct mail and e-mail to attorneys and law students who are members of the Section as well as to non-member attorneys and law students who have identified themselves by registering for various Section events and activities.  The website at www.abanet.org/intlaw also serves as a principal channel of trade for Defendant's services.

**INTERROGATORY NO. 5**

Identify the person most knowledgeable of Defendant's promotional and advertising activities in the U.S. with respect to the goods and services offered under Defendant's Design Mark.

**ANSWER TO INTERROGATORY NO. 5**

Leanne Pfautz.

**INTERROGATORY NO. 6**

Identify the customers to whom Defendant's goods and services bearing Defendant's Design Mark are offered and marketed.

**ANSWER TO INTERROGATORY NO. 6**

The services of the ABA Section of International Law are marketed to members of the Section as well as to non-members who have identified themselves by registering for various Section events and activities.  Defendant objects to this Interrogatory to the extent that it requires the identification of all ABA members, currently numbering more than 400,000, on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant objects on similar grounds to this Interrogatory to the extent

it requires identification all members of the ABA Section of International Law, currently

numbering more than 19,000.  Without waiving this objection, Defendant has identified as Doc.

No. 5,000 *et seq.* a list dated May 2, 1008, identifying those 9,351 U.S. members of the

International Law Section who did not request a restriction on use of their data that would

prohibit the disclosure of that information.  This list indicates that there are 18,036 members in

the U.S. of which 8,685 requested "exclusion," that is, a restriction on the use of their data.

Although these members did not request the exclusion of their data, the list nevertheless

constitutes a confidential and proprietary trade secret of Defendant.  Defendant therefore objects

to the identification of the members in this list in the absence of a suitable stipulated

confidentiality order.  However, a summary of the information in the list is being produced as

Doc. No. 285-286.

The list identified as Doc. No. 5,000 *et seq.* does not include the Section's 1,911 foreign

associates, foreign lawyers and foreign law students.  A list of the 1,841 members of that group

who did not request the exclusion of their data has been identified separately as Doc. No. 7,000

*et seq.*   Although these members did not request the exclusion of their data, the list nevertheless

constitutes a confidential and proprietary trade secret of Defendant.  Defendant therefore objects

to the identification of the members in this list in the absence of a suitable stipulated

confidentiality order.  However, a summary of the information in the list is being produced as

Doc. No. 288-290.

Of the total membership in the ABA Section of International Law, approximately 50%

are attorneys in private practice.  Another ten percent are in-house counsel.  Approximately 80%

of the members live in the United States.  The remaining 20% reside abroad in a total of more

than 90 countries.  The demographics of this customer class as of March 31, 2008, are disclosed

in the document produced as Doc. No. 132-145, and are reflected in the following statistics:

**Section Membership (March 31, 2008)**

| | | |
|---|---|---|
| Total Members | - | 19,350 |
| Lawyers | - | 9,013 |
| Foreign lawyers | - | 814 |
| Foreign associates | - | 1,261 |
| Students | - | 9,076 |

**Age**

| | | |
|---|---|---|
| 35 and under | - | 32% |
| 36-45 | - | 14% |
| 46-54 | - | 13% |
| 55 and over | - | 16% |
| Unknown | - | 25% |

**Gender**

| | | |
|---|---|---|
| Female | - | 36% |
| Male | - | 63% |

**Firm Size**

| | | |
|---|---|---|
| Solo | - | 5% |
| 2-5 | - | 7% |
| 6-9 | - | 3% |
| 10-19 | - | 4% |
| 20-49 | - | 8% |
| 50-99 | - | 8% |
| 100+ | - | 15% |

**Years in Practice**

| | | |
|---|---|---|
| Less than 1 year | - | 5% |
| 1-3 years | - | 7% |
| 4-5 years | - | 4% |
| 6-9 years | - | 6% |
| 10+ years | - | 38% |
| Students | - | 31% |

**INTERROGATORY NO. 7**

Identify and explain the reasons for Defendant's choice of Defendant's Design Mark.

**ANSWER TO INTERROGATORY NO. 7**

The adoption of Defendant's Globe Logo was undertaken as part of a Strategic Plan adopted at the Section's 2002 Fall Meeting for the purpose of enhancing the Section's profile as a leader of the global legal community and as a gateway to expertise in international law and practice issues. At the time, the name of the Section was the ABA "Section of International Law and Practice" ("SILP"). The reasons underlying the decision to engage in a re-branding campaign are discussed in the Strategic Plan, a copy of which is being produced as Doc. No. 70-77. The commencement of this effort in August 2003 is reflected in a report entitled "ABA Section of International Law and Practice Strategic Communication Plan," a copy of which is appended to Defendant's mediation statement as Exhibit A and is being produced as Doc. No. 300-303. The effort was led by Deborah Enix-Ross, Esq., of Debevoise & Plimpton, LLP, acting then as Chair of the Section's Task Force on Strategic Communication. Further information about these developments is contained in the reports produced as Doc. Nos. 78-88 and 89-100.

A chronology of the administration committee meetings leading to adoption of the Globe Logo is appended to Defendant's mediation statement as Exhibit B and produced as Doc. No. 305. Various models and prototypes were taken into consideration, a few of which are depicted in a chart appended as Exhibit C to Defendant's mediation statement and produced as Doc. No. 298-299.

The effort described above led to a memorandum dated March 8, 2004, from Section Chair Joshua Markus to ABA Secretary Ellen Rosenblum, a copy of which is appended to Defendant's mediation statement as Exhibit D and produced as Doc. No. 306-307. By 2005,

extensive efforts had gone into re-branding the Section of International Law.  These efforts are

described in a report dated March 31, 2005, from Deborah Enix-Ross to the Administration

Committee, a copy of which is appended to Defendant's mediation statement as Exhibit E and

produced as Doc. No. 292-296.

The graphics and design associated with Defendant's new Globe Logo were supplied by

a consulting firm named Don Schaff and Friends, Inc., of Washington, D.C.  An estimate

supplied by that firm in the amount of $3,420.00, is appended to Defendant's mediation

statement as Exhibit F and produced as Doc. No. 308-309.

**INTERROGATORY NO. 8**

Identify the persons most knowledgeable concerning adoption and selection of
Defendant's Design Mark.

**ANSWER TO INTERROGATORY NO. 8**

The persons most knowledgeable about the selection and adoption of Defendant's Globe

Logo are Deborah Enix-Ross, Esq., and Rachel Bowen Pittman.  Deborah Enix-Ross was chair

of the Strategic Communications Task Force which was responsible for selection and adoption of

the Globe Logo and other elements of the re-branding campaign.  Ms. Enix-Ross, a past chair of

the Section, is a partner and manager of the litigation section at the law firm of Debevoise and

Plimpton, 919 Third Avenue, New York, NY 10022, tel. (212) 909-6000.

Rachel Bowen Pittman, then an employee of the American Bar Association in

Washington, D.C., headed the staff of the Section of International Law in connection with the

activity of the Strategic Communications Task Force.  Ms. Pitman has since left the ABA and is

now employed as the Director of Member Services of the Regulatory Affairs Professionals

Society (RAPS), 5635 Fishers Lane, Suite 550, Rockville, MD 20852, tel. (301) 255-6217.

**INTERROGATORY NO. 9**

Identify any searches conducted or authorized by Defendant prior to the adoption and use of Defendant's Design Mark.

**ANSWER TO INTERROGATORY NO. 9**

A trademark search report was correctly considered unnecessary on the grounds that any source-indicating function attributable to the Globe Logo would be dominated by the names and service marks "ABA," "American Bar Association," and "Section of International Law."

**INTERROGATORY NO. 10**

Identify any inquiry to Defendant from any person not a party to this action concerning any relationship between Defendant and Plaintiff.

**ANSWER TO INTERROGATORY NO. 10**

Defendant is unaware of any such inquiry.

**INTERROGATORY NO. 11**

Identify each person you expect to call as a factual witness at the trial of this case, and for each person identified, state his or her present address and telephone number.

**ANSWER TO INTERROGATORY NO. 11**

Defendant objects to this Interrogatory on the grounds that it is unduly burdensome. Pursuant to LCvR 16.5(b)(1)(iv), Defendant is not required to identify the witnesses that it intends to call prior to the pretrial statement. Without waiving this objection, Defendant states that the persons most likely to be called as factual witnesses include:

- Deborah Enix-Ross, Esq., DEBEVOISE & PLIMPTON, 919 Third Avenue, New York, NY 10022, tel. (212) 909-6000;

- Rachel Bowen Pittman, Director, Member Services, Regulatory Affairs Professionals Society (RAPS), 5635 Fishers Lane, Suite 550, Rockville, MD 20852, tel. (301) 255-6217;

- Leanne Pfautz, Director, Section of International Law, American Bar Association, 740 15th St., N.W., Washington, D.C. 20005, tel. (202) 662-1661;

- Jeffrey Golden, Esq., Chair, Section of International Law, American Bar Association, c/o Allen & Overy, One Bishops Square, London, E1 6AD, United Kingdom, tel. +44 20 3088 2775; and

- Aaron Schildhaus, Esq., Chair-Elect, Section of International Law, American Bar Association, c/o Law Offices of Aaron Schildhaus, 1101 New Hampshire Ave., N.W., Suite 901, Washington, D.C. 20036-1508.

## INTERROGATORY NO. 12

Identify each expert witness you expect to examine during the testimony phase of this proceeding, and for each such expert witness state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify.

## ANSWER TO INTERROGATORY NO. 12

Defendant has not at this time identified or consulted with any expert witness but will timely inform Plaintiff in the event that changes.

## INTERROGATORY NO. 13

Identify all marketing, literature, and promotional material used in connection with the sale or promotion or offering of goods or services bearing Defendant's Design Mark.

## ANSWER TO INTERROGATORY NO. 13

Defendant objects to this request to the extent it requires the identification of "all" such material on the grounds that the request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In support of this objection Defendant notes that its website at www.abanet.org/intlaw, a principal source of Defendant's marketing, literature and promotional material, currently consists of approximately 5,300 pages, including approximately 2,511 HTML documents. Without waiving this objection, Defendant states that the publications identified in response to Interrogatory No. 1 above provide a fair and accurate representation of Defendant's marketing, literature and promotional material.

In addition to its website, books and publications, Defendant distributes various items of promotional merchandise bearing the Globe Logo.  These items are listed in the document produced as Doc. No. 504 and illustrated by the following exemplars:

- Beach Ball, Ex. 1

- Ribbon, Ex. 2

- Linen Shirt, Ex. 3

- Card Case, Ex. 4

- Notebook and Ballpoint Pen Set with ABA Logo, Ex. 11

- Baseball Cap, Ex. 12

- Pashmina, Ex. 13

- Canvas Bag, Ex. 14

- Note Pad, Ex. 15

- Lapel Pin, Ex. 21

- Combination Lock, Ex. 26

- Folder, Ex. 28

- Book Divider, Ex. 30

Additional examples of fliers, brochures and other materials used by Defendant for advertising and promotion are being produced as Doc. Nos. 512; 513-514; 516; 517-532; 533-628; 629-633; 634-641; and 642.

**INTERROGATORY NO. 14**

Identify all instances within the knowledge of Defendant of actual confusion between the Defendant and the Plaintiff.

**ANSWER TO INTERROGATORY NO. 14**

Defendant is unaware of any such instances. Moreover, considering the overlap in membership between the ABA Section of International Law and the ABA Section of Intellectual Property Law, it is probable that such confusion, were it likely, would have occurred, and that, had confusion occurred, it would have come to the attention of Defendant. Currently there are at least 4,533 individuals who are members of both Sections. Of these individuals, 2,860 have requested the exclusion of their personal data. The other 1,673 are identified in a list identified as Doc. No. 8,000 *et seq.* Although these 1,673 members did not request the exclusion of their data, the list nevertheless constitutes a confidential and proprietary trade secret of Defendant. Defendant therefore objects to the identification of the members in this list in the absence of a suitable stipulated confidentiality order.

**INTERROGATORY NO. 15**

Identify all instances where a member or prospective member of the Defendant organization was inadvertently assigned to the ABA Section of International Law instead of the ABA Section of Intellectual Property Law.

**ANSWER TO INTERROGATORY NO. 15**

Defendant objects to this Interrogatory on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. A large number of members of the Section of International Law are also members of other ABA Sections. Of the Section's total U.S. membership as of October 2007, which then numbered around 18,000, 7,824 were also members of the ABA Business Law Section; 5,308 were also members of the ABA Litigation Section; 3,607 were also members of the ABA Dispute Resolution Section; 3,273

were also members of the Intellectual Property Law Section; and 2,477 were are also members of

the Section of Individual Rights and Responsibilities.  Defendant has no means of examining the

data concerning these memberships with a view toward answering this Interrogatory.  Without

waiving this objection, Defendant states that it is unaware of any such instance.

**INTERROGATORY NO. 16**

Identify all instances where a member or prospective member of the Defendant
organization was inadvertently assigned to the ABA Section of Intellectual Property Law instead
of the ABA Section of International Law.

**ANSWER TO INTERROGATORY NO. 16**

Defendant objects to this Interrogatory for the reasons stated in response to Interrogatory

No. 15.  Without waiving this objection, Defendant is unaware of any such instance.

**VERIFICATION**

The undersigned, being hereby warned that willful false statements and the like so

made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, declares under

penalty of perjury that she has first hand knowledge of the facts set forth in the foregoing

interrogatory answers, and that such facts are true and correct to the best of her knowledge,

information and belief.


_____
Leanne Pfautz, Director
Section of International Law
**AMERICAN BAR ASSOCIATION**
740 15th St., N.W.
Washington, D.C. 20005
tel. (202) 662-1661

**AS TO OBJECTIONS:**

_____
Bruce A. McDonald, D.C. Bar No. 293753
**SCHNADER HARRISON SEGAL & LEWIS LLP**
2001 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
(202) 419-4235

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 28, 2008, a copy of the foregoing Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories was sent by UPS overnight delivery to counsel of record for Plaintiff at the following address:

> Matthew C. Wagner, Esq.
> COLLEN IP
> The Holyoke-Manhattan Building
> 80 South Highland Avenue
> Town of Ossining
> Westchester County, NY 10562

_____

Bruce A. McDonald
Attorney
**SCHNADER HARRISON SEGAL & LEWIS LLP**

# Exhibit D



2001 PENNSYLVANIA AVENUE, NW   SUITE 300
WASHINGTON, DC 20006-1825
202.419.4200   FAX 202.419.3454   schnader.com

BRUCE A. MCDONALD
PARTNER
(202) 419-4235

April 8, 2008

**BY FIRST-CLASS MAIL**

Matthew C. Wagner, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Town of Ossining
Westchester County, NY 10562

      Re:    *Collen IP v. American Bar Association,* Civil Action No. 07-1861 (ESH)
             (D.D.C.), Our Ref. 0999908.1295

Dear Matt:

      Unfortunately the ABA is not in a position to accept the settlement offer articulated in your e-mail dated April 1, 2008. At the same time, your April 1 communication implicitly rejects the offer that we extended during the March 13 mediation conference pursuant to which the ABA would continue to use its "Globe" logo as part of a composite mark.

      As the parties appear to be in disagreement, I am enclosing with this letter the following:

      (1)     Defendant's First Set of Interrogatories to Plaintiff;

      (2)     Defendant's First Request for Production of Documents and Things;

      (3)     Defendant's First Set of Requests for Admission of Fact and Genuineness of Documents; and



Matthew C. Wagner, Esq.
April 8, 2008
Page 2


       (4)    A draft stipulated protective order, executed by the undersigned, which will hopefully obviate any discovery objections based on confidentiality.  The provisions of this draft are adopted from the Federal Judicial Center's Manual for Complex Litigation, Fourth, § 40.27, found at  www.fjc.gov/public/home.nsf/autoframe?openform&url_r=pages/524.

       I look forward to further communications with you regarding this matter.

               Sincerely,

               Bruce A. McDonald

BAM:jd
Enclosures

cc:       American Bar Association (w/enc.)

# Exhibit E



Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com
Email: mwagner@collenIP.com

May 27, 2008

**VIA FIRST CLASS MAIL**
Bruce A. McDonald
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006-1825

> Re:  *COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C. v*
> *AMERICAN BAR ASSOCIATION.* 07-1861 (ESH)
> Our ref no. 94505

Dear Bruce:

Enclosed please find the following responses to your discovery requests:

1. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION OF FACT AND GENUINESS OF DOCUMENTS

2. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

3. PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

We cannot agree to your proposed Protective Order, as it does not contain any provision for attorney eyes only (e.g. two tiers) materials. Also, even such a two tiered approach would not protect certain of our firm's confidential financial information from its direct competitors, which of course includes your firm as well as the individual practitioners that constitute Defendant's executives and membership. This concern I am sure is mutual. In fact, we cannot envision a Protective Order that could adequately protect the parties' commercially sensitive information in the unique circumstances of this case.  However, as a practical matter, we believe that we can agree to one or more stipulations that will enable us to avoid the need to produce such financial information.

Presumably, your client and its members have no more desire to divulge confidential financial information than we do, and such information really isn't necessary here. Both parties clearly provide substantial services under their marks throughout the United States and the world, and we should accordingly be able to arrive at a mutually agreeable stipulation to the effect that both marks are valuable, that substantial sums have been spent by both parties on the development and promotion of their marks, etc., without the need to elicit anything further in the way of specific financial information.

Please call me to discuss resolution of this issue. I am hopeful that this can be resolved between us without the Court's intervention.

In any event, we need to revise your protective order to allow for confidential and highly confidential (attorney eyes only) tiers. We have attached a proposed protective order that we believe will account for the two-tier approach.

Very truly yours,
COLLEN *IP*

Matthew C. Wagner

MCW/FEE:pg
Enclosures: Plaintiff's Objections and Responses to Defendant's First Set of Requests for Admission of Fact and Genuiness of Documents, Plaintiff's Objections and Responses to Defendant's First Request for Production of Documents, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories,
Proposed Protective Order
p:\9\94\94505_FINAL Draft Letter to Opp._080527.DOC

# Exhibit F

# Model Confidentiality Agreement

## *The Committee on State Courts of Superior Jurisdiction*

The New York City Bar Association Committee on State Courts of Superior Jurisdiction (the "Committee") has become aware of the substantial expenditure of time and resources of the court and counsel in connection with the negotiation and drafting of confidentiality agreements. It is our impression that confidentiality agreements are used with greater frequency, particularly in cases filed in the Commercial Division. To assist the court and the Bar, and to promote efficiency in these cases, the Committee has drafted a standardized form of confidentiality agreement.

The Committee spent a significant amount of time deliberating over the contents of the Stipulation and Order for the Production and Exchange of Confidential Information ("Stipulation and Order"). Our primary concerns related to the filing under seal documents which had been designated as confidential under the Stipulation and Order, and whether to provide a mechanism for the designation of documents classified as "Attorneys' Eyes Only."

### Filing Under Seal

In New York, there is a strong presumption favoring public legal proceedings and against sealing files without good cause shown. *Danco Lab., Ltd. v. Chemical Works of Gedeon Richter, Ltd.*, 274 A.D.2d 1, 711 N.Y.S.2d 419 (1st Dep't 2000); In re Twentieth Century Fox Film Corp., 190 A.D.2d 483, 601 N.Y.S.2d 267 (1st Dep't 1993). NYCRR § 216.1 provides:

STATE COURTS OF SUPERIOR JURISDICTION

Sealing of court records

(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard.(b) For purposes of this rule, "court records" shall include all documents and records of any nature filed with the clerk in connection with the action. Documents obtained through disclosure and not filed with the clerk shall remain subject to protective orders as set forth in CPLR 3103(a).

However, litigants have legitimate concerns about keeping private information private and protecting trade secrets, particularly in this age of electronic filing and the Internet. George F. Carpinello, "Public Access to Court Records In New York: The Experience Under Uniform Rule 216.1 and the Rule's Future in a World of Electronic Filing," 66 Alb.L.Rev.1089 (2003). In fact, many proposed confidentiality orders are rejected, particularly in the Commercial Division, because parties attempt to seal files by agreement.

With respect to filing under seal, the Stipulation and Order provides that the party who designated the documents as confidential will be given notice of the other party's intent to file such material with the court, and the designating party may then file a motion to seal the document or the file within seven days. *See e.g. Eusini v. Pioneer Electronics (USA), Inc.*, 29 A.D.3d 623, 815 N.Y.S.2d 653 (2d Dep't 2006). The confidential material may not be filed until the court decides the motion to seal. Alternatively, any party may submit confidential documents in a sealed envelope to the clerk of the part or chambers, and the documents will be returned upon disposition of the motion or other proceeding.

## Attorneys' Eyes Only

As for "Attorneys' Eyes Only," the Committee decided not to include the option for such protection primarily out of a concern that it would be invoked far more than necessary. Inevitable disputes over the propriety of a party's invoking "Attorneys' Eyes Only" protection would undercut the overall goal of the Committee to reduce the time required to negotiate confidentiality agreements.

MODEL CONFIDENTIALITY AGREEMENT

Counsel are encouraged to agree to the Stipulation and Order or modify it to accommodate the needs of each case. The court's time spent reviewing the Stipulation and Order will be minimized when the court is informed that the parties have agreed to the Stipulation and Order.

We hope the Stipulation and Order will contribute to the further efficiency of the courts and the bar.

*February 2007*

# Committee on
# State Courts of Superior Jurisdiction

Andrea Masley, *Chair**
Janis M. Felderstein, *Secretary*

| | |
|---|---|
| Amy K. Adelman | Karen Greenberg |
| Frederick A. Brodie* | Natan M. Hammerman* |
| Darryll A. Buford* | Fran R. Hoffinger |
| Cheryl E. Chambers | Katherine B. Huang |
| Louis A. Craco | Erin K. Hurley |
| Tracee E. Davis | Shirley W. Kornreich |
| Margaret A. Dale | John N. Orsini |
| Marilyn B. Dershowitz | Michael Reyes |
| Sylvia E. DiPietro | Cynthia B. Rubin |
| Marguerite S. Dougherty | Jay G. Safer |
| Jeffrey M. Eilender | David H. Sculnick |
| Sherri L. Eisenpress | Monica J. Stamm |
| R. Brent English* | Paul M. Tarr |
| Cecelia L. Fanelli* | Gabriel Torres |
| Jeffrey A. Fuisz | Steven Telzak |
| Christopher R. Gette | Raymond Leonard Vandenberg |
| Ann L. Goldweber | Lauren J. Wachtler |
| Peter G. Goodman* | Elizabeth M. Young |

*Members of Subcommittee which drafted agreement.

# Exhibit G

**McDonald, Bruce A.**

| | |
|---|---|
| **From:** | McDonald, Bruce A. |
| **Sent:** | Wednesday, July 02, 2008 6:02 PM |
| **To:** | 'mwagner@collenip.com' |
| **Subject:** | Stipulation and Protective Order, Our Ref. 0999908-1295 |
| **Attachments:** | Stipulation and Protective Order.pdf; Collen IP cover letter re discover responses.pdf; C00034C6.PDF; Model Confidentiality Agreement #2.pdf; Model Confidentiality Agreement # 1.pdf |

Hi Matt,

As promised, attached is the counter-signed confidentiality stipulation that you requested in your letters dated May 27 and June 27, 2008 (also attached).

In response to your inquiry about any concerns we have regarding the draft that you provided, we did indeed have some concerns about your draft, which is why the matter was under advisement for 30 days. Our first concern is that if Plaintiff intends to show that its "C" Logo has acquired secondary meaning apart and aside from its appearance with the name "COLLEN IP," then the burden of proof is on Plaintiff to prove such secondary meaning by means of sales and advertising figures, which you have stated are so exceedingly confidential that you do not intend to disclose them with or without a protective order. Moreover, you have objected to our discovery requests in this respect on grounds of relevance.

Secondly, the draft that you provided calls for multiple tiers of protection, namely, "Confidential," and "Highly Confidential." To be honest, I have never even seen a two-tier agreement like this and am thinking that you probably adapted it from a more traditional two-tiered agreement allowing for designation of materials as "Attorneys Eyes Only." Since the parties here as well as their representatives are all attorneys, the "Attorneys Eyes Only" designation hardly makes any sense, which is why I provided you with a draft calling for only one tier of protection.

As you may be aware, two-tier agreements such as the one you have proposed have been increasingly disapproved on the grounds that they result in excessively broad claims of confidentiality. Please refer to the Model Confidentiality Agreement and associated Report of the New York City Bar Association on State Courts of Superior Jurisdiction (attached). By contrast, the draft that we provided to you has been specifically approved in the Federal Judicial Center's Manual for Complex Litigation, Fourth, § 40.27, at www.fjc.gov/public/home.nsf/autoframe?openform&url_r=pages/524.

Despite these concerns, I have executed the draft that you provided as an accommodation to you, and in consideration of the fact that confidentiality appears to be a greater concern to Plaintiff than to Defendant. To date, the only documents over which we have claimed confidentiality are lists of Section members, which you are welcome to have, provided that you do not use them for any purpose unrelated to the litigation, for example direct marketing.

I now turn to your request for discussion of a stipulation, as stated in your June 27 letter, that would "obviate the need to divulge confidential financial information that, under the unique circumstances of this case, cannot be protected from disclosure to direct competitors." Your May 27 letter speaks to the possibility of a stipulation that "both marks are valuable," etc. Our concern here is as follows. We do not believe that Plaintiff has made substantial use of the "C" Logo apart and aside from its appearance with the name "Collen IP." In your discovery responses you have objected on grounds of relevance to our request for sales and advertising figures associated with use of the "C"

Logo apart and aside from the name "Collen IP."  It is our position that such relevance objections constitute an admission that Plaintiff has no evidence, and in any event is unwilling to produce any evidence, showing the manner or extent to which the "C" Logo has been used or advertised apart and aside from its appearance with the name "Collen IP."  We believe that this is a fatal flaw in Plaintiff's case and we are unwilling to execute any stipulation that negates or compromises that position.

I am of course available to discuss this with you at your convenience and look forward to speaking with you at your earliest convenience regarding this and other pending issues.

Sincerely,

Bruce A. McDonald
SCHNADER HARRISON SEGAL & LEWIS LLP
2001 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
(202) 419-4235

**Counter-Signed Confidentiality Stipulation**



Stipulation and
Protective Ord...

**5/27/2008 Letter from MCW to BAM**



Collen IP cover
letter re disc...

**6/27/2008 Letter from MCW to BAM**



C00034C6.PDF
(59 KB)

**Model Confidentiality Agreement and Associated Report of New York City Bar Association on State Courts of Superior Jurisdiction**

   

Model                Model
dentiality Agreementdentiality Agreem

# Exhibit H

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COLLEN IP, INTELLECTUAL | ) | |
| PROPERTY LAW, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1861 (ESH) |
| | ) | |
| AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF RULE 30(b)(6) DEPOSITION DUCES TECUM**

TO:         Matthew C. Wagner, Esq.
            COLLEN IP
            The Holyoke-Manhattan Building
            80 South Highland Avenue
            Town of Ossining
            Westchester County, NY 10562

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure (Fed.R.Civ.P.), commencing at 1:00 p.m., on Tuesday, July 29, 2008, and continuing

from day to day until completed, the undersigned attorneys for Defendant will take the

deposition of Plaintiff pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

Defendant will take the above deposition upon oral examination before a court reporter or

other officer authorized to administer oaths, at the offices of undersigned counsel Bruce A.

McDonald, Esq., SCHNADER HARRISON SEGAL & LEWIS LLP, 2001 Pennsylvania Ave.,

N.W., Suite 300, Washington, D.C. 20006 (tel. 202/419-4235).

Pursuant to Rule 30(b)(6), Fed.R.Civ.P., Plaintiff is directed to designate a person or persons in its organization to provide accurate and comprehensive information relating to:

(1)  Any and all usage of the "C" Logo by Plaintiff apart and aside from its appearance in a composite mark with the name "COLLEN IP";

(2)  The volume of sales and advertising expenditures to date in connection with Plaintiff's services, and the geographical scope of such sales and advertising;

(3)  The volume of sales and advertising expenditures to date in connection with Plaintiff's "C" Logo, and the geographical scope of such sales and advertising;

(4)  The volume of sales and advertising expenditures to date in connection with Plaintiff's "C" Logo apart and aside from its appearance in a composite mark with the name "COLLEN IP";

(5)  The manner and extent to which Plaintiff uses its "C" Logo;

(6)  The manner and extent, if any, to which Plaintiff uses its "C" Logo apart and aside from its appearance in a composite mark with the name "COLLEN IP";

(7)  Any evidence that Plaintiff's "C" Logo has acquired distinctiveness or secondary meaning;

(8)  Any evidence that Plaintiff's "C" Logo has acquired distinctiveness or secondary meaning apart and aside from its appearance in a composite mark with the name "COLLEN IP";

(9)  A description of the services offered by Plaintiff;

(10) The class of purchasers of Plaintiff's services;

(11) The price of Plaintiff's services;

(12) Plaintiff's channels of trade;

(13) The media employed by Plaintiff for advertising and promotion of its services, and the manner in which Plaintiff's services are marketed to Plaintiff's purchaser class;

(14) Any evidence of actual confusion;

(15) Any evidence in support of Plaintiff's position that Defendant adopted, selected or used its Globe Logo in bad faith; and

(16) Any evidence in support of Plaintiff's claim for damages or other monetary recovery in this case.

**Production of Documents**

Plaintiff is requested to produce the documents and things that are identified, and/or required to be identified or produced, in Defendant's First set of Interrogatories and First Request for Production of Documents and Things.

Respectfully submitted,

**AMERICAN BAR ASSOCIATION**

By: _____

Bruce A. McDonald, D.C. Bar No. 293753
SCHNADER HARRISON SEGAL & LEWIS LLP
2001 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
Tel.    (202) 419-4235
Fax.    (202) 419-3454
e-mail: bmcdonald@schnader.com

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 18, 2008, a copy of the foregoing NOTICE OF RULE 30(b)(6) DEPOSITION DUCES TECUM was served by electronic mail, facsimile and overnight delivery on counsel of record for Plaintiff at the following address:

>       Matthew C. Wagner, Esq.
>       COLLEN IP
>       The Holyoke-Manhattan Building
>       80 South Highland Avenue
>       Town of Ossining
>       Westchester County, NY 10562
>       Tel.:   (914) 941-5668
>       Fax:    (914) 941-6091
>       e-mail: mwagner@collenip.com


_____
Bruce A. McDonald
Attorney
SCHNADER HARRISON SEGAL & LEWIS LLP

# Exhibit I

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COLLEN IP, INTELLECTUAL )
PROPERTY LAW, P.C., )
                 )
        Plaintiff, )
                 )
      v. )       Civil Action No. 07-1861 (ESH)
                 )
AMERICAN BAR ASSOCIATION, )
                 )
        Defendant. )

## DECLARATION OF SUSAN BRUSHABER

(1)      My name is Susan Brushaber, and I am submitting this declaration on behalf of the ABA Section of International Law pursuant to Rule 702 of the Federal Rules of Evidence, based on my professional background as a trademark lawyer and my occupational expertise in trademark availability and clearance procedures.

(2)      By way of qualification, I am a partner with the Denver-based law firm Schuchat, Herzog & Brenman, LLC, where I advise clients on a variety of issues ranging from the licensing, management, enforcement and protection of their intellectual property worldwide to company formation both domestically and abroad. Prior to joining SHB in July of 2006, I was the Director of International and Legal Affairs at Quark, Inc., a leading developer of tools and technologies for desktop, workgroup and enterprise publishing. While at Quark, I managed the company's worldwide intellectual property portfolio and was the primary legal advisor to the Product Management, Research & Development and Sales & Marketing Departments. I am a graduate of the Seton Hall Law School, and obtained my undergraduate degree from Hood College as well as a Masters Degree from the University of Wisconsin in Madison, Wisconsin. I am a vice

chair of the International Intellectual Property Committee of the Section of International

Law and Practice of the American Bar Association as well as a member of the

Intellectual Property and Business Law Sections, and a contributor to the *International

Law Quarterly* and the *International Year in Review.*  I was co-chair of the Anti-

Counterfeiting Panel at the 2006 Annual Meeting of the American Bar Association.  I am

Vice Chair of the International Section of the Colorado Bar Association, a member of the

Advisory Board of the International Business Club of Colorado, and am licensed to

practice law in New York, New Jersey and Colorado.

      (3)      I will emphasize at the outset that I am an active member of the ABA

Section of International Law and know the individuals who have submitted declarations

on Defendant's behalf.  I have therefore attempted to ensure that my viewpoints in this

declaration are not biased by my extracurricular professional acquaintanceship with

Defendant's witnesses.  For the record, I am not receiving any compensation in

connection with this opinion; my opinion is based on my own experience as a trademark

practitioner and not on academic publications; and I have not testified during the past

four years as an expert at trial or by deposition.

      (4)      It is my view, as a trademark practitioner, that the Globe Logo as used by

the ABA Section of International Law does not function as a designation of origin that

identifies the ABA as the source of any product or service.  In all the examples of usage

that I have seen, the Globe Logo appears instead to serve as an ornamental graphic

connoting the global aspects of international law and is therefore inherently descriptive in

its function.  Assuming - as I have been asked to assume for purposes of this declaration -

that the Globe Logo was never intended to be used apart from the names "American Bar

Association" and "ABA Section of International Law," it is my opinion, therefore, that ordinary and customary trademark clearance procedure did not call for the conduct of a trademark search report or availability opinion at the time of the Section's adoption and selection of the Globe Logo in 2004.

(5)    In reaching this opinion, I have examined the declarations of Jeffrey Golden, Aaron Schildhaus, Deborah Enix-Ross, and Leanne Pfautz. I have also examined a trademark search report produced by Thomson Compumark on March 3, 2008, a copy of which is appended to this declaration as Exhibit 1.

(6)    Search reports from Thomson Compumark such as the one appended as Exhibit 1 are customarily relied upon by trademark practitioners in rendering opinions involving the availability of trademarks.

(7)    The Thomson Compumark trademark search report appended as Exhibit 1 was directed to logos and designs including globes, planets, moons, orbits, rings, and crescents. The scope of services in the search was necessarily broad in conformance with Plaintiff's contention that the parties' marks are confusingly similar even though the parties offer different services and are not in competition with each other.

(8)    The design portions of the trademarks disclosed in the Thomson Compumark search report are represented in an illuminating chart appearing directly underneath the table following my signature at the bottom of this declaration. Each of the designs appearing in the chart is accompanied by a numeral corresponding to the Thomson Compumark reference number in Exhibit 1.

(9)    A word about the relevancy of this evidence: a trademark search report such as Exhibit 1 says nothing about actual commercial use of the trademarks cited in the

report.  As is typical in such a report, some of the cited trademark registrations and applications have been cancelled or abandoned.  Moreover, even certified copies showing the status and title of current registrations would not reveal the extent to which such marks are actually used in commerce.  Therefore, third-party registrations and applications are not ordinarily relied upon to determine whether, or to what extent, a party's trademark has been weakened by the use of similar marks by third parties.

(10)    While third-party registrations and applications are not probative of the extent to which trademarks are used in commerce, they can assist greatly in determining whether a word, a phrase - or in this case a design - appears in third-party registrations and applications because of its descriptive properties.  Used in this manner, third-party registrations and applications serve as a type of dictionary evidence.  When the meaning of a *word or phrase* is in question, the appearance of the word or phrase in third-party registrations and applications may establish that it has a common understanding.  Where, as here, the question is whether either or both of the parties' *designs* are descriptive in nature, the third-party registrations and applications of record are especially valuable.

(11)    Several conclusions emerge from an examination of the design portions of the trademarks depicted in the third-party registrations and applications cited in Exhibit 1 and charted at the bottom of this declaration.  First, the letters "C," "G" and "Q," often resembling one another, have been adopted in a large number of trademarks as

descriptive and ornamental accoutrements to names that begin with the letters "C," "G" and "Q." The following are examples:





(12)    A second observation that can be made from an examination of the third-party registrations and applications is that stylized depictions of the letter "C" have been adopted by others for use in connection with intellectual property protection based on the descriptive property associated with the copyright symbol ©.  Examples include the following:



(13)    A third fact that emerges from the third-party registrations and applications is that depictions of moons and planets, including the earth, in the form of a globe, frequently with orbiting or spiraling rings, and frequently combined with the letters "C," "G" or "Q" in correspondence with the first letter of the trademark owner's name, have been adopted by a large number of third parties in trademarks as an ornamental graphic element that connotes global, universal, international, interconnected, or environmental properties.  Although it is possible to parse too deeply for the connection between the globe and the products or services in some instances, examples of

globe depictions conveying a descriptive or suggestive property about the associated

products and services include the following:











(14)    Finally, two facts are apparent from the colors in the trademarks depicted

in the third-party registrations and applications.   First, the colors blue and green

predominate by a wide margin over all other colors combined.   Second, the prevalence of

blue and green is particularly evident in connection with color renditions of the earth,

virtually all of which include blue and/or green, as illustrated by the following:



12



(15)    To avoid usurping the role of the Court in determining an ultimate issue

of law, I have been asked to refrain from stating an opinion on whether confusion is

likely between the parties' marks in this case.  However, I do believe it is within the

realm of my expertise as a trademark practitioner to offer the opinion, based on the

evidence, that both of the parties' logos in this case are descriptive, ornamental, and

correspondingly weak from the standpoint of trademark protection.  Moreover, as

stated above, I do not even believe that the Defendant's Globe Logo even functions as

a designation of source apart from its appearance in association with the names

"American Bar Association" and "ABA Section of International Law."  Assuming,

therefore, as I have been asked to do, that the Globe Logo was never intended to

function as a designation of source apart from its association with the names

"American Bar Association" and "ABA Section of International Law," it is my

opinion that ordinary and customary trademark clearance procedure did not call for the

conduct of a trademark search report or availability opinion at the time of the

Section's adoption and selection of the Globe Logo in 2004.

The undersigned, being hereby warned that willful false statements and the like

so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001,

declares under penalty of perjury that the facts set forth in this declaration are true and

correct to the best of her knowledge, information and belief.

_____
Susan Brushaber
Schuchat, Herzog & Brenman, LLC
1900 Wazee Street, Suite 300
Denver, CO 80202
Tel.:    (303) 295-9700
Fax:    (303) 295-9701

July 28, 2008

**Exhibit**

| Ex. | Description |
|-----|-------------|
| **1** | Thompson Compumark Trademark Search Report Dated March 3, 2008 |

**Design Portions of Marks Cited in**
**3/13/2008 Thomson Compumark Search Report**















